### In re DOUGLAS L.

No. 92–119 C.A.

Supreme Court of Rhode Island.

June 9, 1993.

**1358**

Jeffrey Pine, Atty. Gen., Aaron Weisman, Asst. Atty. Gen., Joseph Houlihan, Jr., Sp. Asst. Atty. Gen., for plaintiff.

Paula Lynch Hardiman, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case came before us on appeal of the respondent, Douglas L., from two judgments of conviction for assault with intent to murder following a jury trial in Family Court. For the reasons that follow, we reverse the convictions.

After midnight on August 12, 1990, three individuals armed with handguns approached a car stopped in traffic at Eddy Street and Globe Street in Providence, Rhode Island. Shots were fired into the car in which four people were riding. As a result of the fusillade, one passenger, Willie Davis (Davis), died from a gunshot wound to the head and another passenger, Rodney Perry (Perry), was shot in the right arm. Five petitions were filed against respondent, then sixteen years old, alleging his delinquency for (1) the murder of Davis, (2) the assault with intent to murder Ronald Nelson (Nelson), the driver of the car, (3) the assault with intent to murder Perry, (4) the commission of a violent crime while armed with a firearm, and (5) the unlicensed carrying of a handgun. Douglas was certified to be tried before a jury in Family Court pursuant to G.L.1956 (1981 Reenactment) §§ 14–1–7.2 and 14–1–7.3, as amended by P.L.1990, ch. 18, § 2.

During the course of the trial, the state called as witnesses all three surviving individuals present in the car at the time of the shooting, namely, Perry, Nelson, and Kimani Morris (Morris). Of particular importance to respondent's appeal is the testimony of both Perry and Morris.

Perry testified that on the night in question he was riding in the back seat behind Davis, who was in the passenger's seat. He stated that he first saw Alexis Doctor (Alexis), carrying a handgun, approach the car from the front on the passenger's side of the car and he then saw Jose Doctor (Jose) run toward the driver's side. Perry saw Alexis point the gun at the car, and as Perry ducked, he heard a gunshot blast through the front windshield, just in front of where Davis was sitting. According to Perry, Alexis then ran from the front of the car toward the passenger's side and

shot at him in the back seat. It is at this time that Perry was shot in his right arm.

Perry then testified that next he saw "[s]ome kid with a hood" approach the car, fire a shot through the front window, and hit Davis in the head. When initially asked on direct examination if he knew who that person was, he replied, "I couldn't see him, he had a hood on." In an attempt to get Perry's prior identification of respondent before the jury, the state established that Perry had given a statement to the police the day after the incident, at which time he stated that "Junior," who was later identified as respondent, had shot Davis. Perry tried to refute his prior identification of Douglas by claiming, "When I gave the police statement, the kids that were in the car, they said—and they were giving theirs, saying they seen [*sic*] Junior." The trial justice ruled, over the objection of respondent's counsel, that Perry's prior identification of respondent as Davis' assailant may be used as substantive evidence pursuant to Rule 801(d)(1)(A) of the Rhode Island Rules of Evidence, and we agree with that determination.

On cross-examination, respondent's counsel inquired into Perry's prior adult and juvenile convictions and then sought to question Perry about his bias or his motive in testifying for the state. Specifically respondent's counsel suggested outside the presence of the jury that because Perry was cooperating with the state by testifying against respondent, the state took no position on a motion for bail reduction that he had filed in Superior Court prior to testifying. Furthermore, respondent's counsel noted that Perry had numerous criminal charges pending against him, which charges would allow counsel to cross-examine the witness about the expectations or hopes of leniency he may have in exchange for his testimony. The trial justice disallowed this proposed line of questioning, ruling it was not proper impeachment material.

Morris testified that when Nelson, the driver of the car, pulled up to a drinking establishment on Eddy Street, he heard someone yell and looked up. He stated that at that moment, as he sat in the back seat behind Nelson,

"[he] saw Alexis Doctor and Junior on the right with guns in their hands. Heard one shot, ducked, then a couple more shots, ducked my head under the seat, shots continued for a couple of seconds, looked up to the passenger side a little bit, saw Jose Doctor. He shot about twice, just covered my head a couple of minutes, then didn't hear no more shots."

Like Perry, Morris also identified "Junior" as respondent.

On cross-examination, respondent's counsel challenged Morris' memory of the event by first questioning him about the six people he said were in the car at the time of the shooting. The respondent's counsel next cross-examined Morris about his reasons for not reporting the shooting to the police immediately following the event but instead gave a statement over two months later, at which time he was picked up by Providence police officers on an unrelated matter. The respondent's counsel then established that Morris never actually saw Douglas fire the gun he was pointing because Morris had ducked his head after Alexis fired the first shots, peeking up only for a brief moment when the shooting stopped and observing Jose shooting at Nelson. Finally, respondent's counsel questioned Morris about his prior criminal activity as a juvenile, as counsel for both respondent and the state believed he had no adult convictions.

Outside the presence of the jury on the day following Morris' direct examination and cross-examination, the prosecutor informed the court that just one day before, Morris had testified that he had pleaded nolo contendere to several felony charges, namely, three counts of assault with a dangerous weapon and one count of possession of marijuana with intent to deliver. Morris received a ten-year suspended sentence and ten years' probation for each assault count, each of which had been reduced from a charge of assault with intent to commit murder, and a ten-year suspended sentence and ten years' probation for the possession

count. During a voir dire of this witness, respondent's counsel interrogated Morris about why he had received such a favorable disposition for these charges, implying that the reduced charges and lenient sentences were in exchange for his testimony against respondent. The respondent's counsel further inquired about Morris' expectation of having a recent robbery charge against him dismissed, presumably because, according to Morris, the victim of the robbery no longer desired to press the charge.

The respondent's counsel thereafter requested that he be able to recall this witness and "be permitted to inquire about promises, rewards, promises of leniency that [Morris] has for the robbery charge * * * and that he has with respect to the disposition of the * * * various charges" just two days earlier. The trial justice denied counsel's request but then permitted that for impeachment purposes a stipulation be read to the jury, disclosing that Morris had been convicted recently on three counts of assault with a dangerous weapon and one count of possession of marijuana with intent to deliver.

On June 17, 1991, after a week-long trial, the jury found respondent guilty of assault with intent to murder Perry and assault with intent to murder Nelson; the jury acquitted Douglas on the charge of the murder of Davis.[1] The respondent raises three issues on appeal, only one of which we shall address because it is dispositive of this case. With respect to that issue, respondent contends that the trial justice improperly refused to allow respondent's counsel to cross-examine key prosecution witnesses on their motives or biases in testifying for the state. We agree.

An accused's right to be confronted with witnesses against him or her is guaranteed by the Sixth Amendment to the United States Constitution, *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39

L.Ed.2d 347, 353 (1974), as well as by the Fourteenth Amendment in state criminal proceedings, *Pointer v. Texas*, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923, 926 (1965), and by art. I, sec. 10, of the Rhode Island Constitution. *State v. Eckhart*, 117 R.I. 431, 435, 367 A.2d 1073, 1075 (1977). Of primary interest to a criminal defendant in exercising his or her rights secured by the confrontation clause is the right to cross-examine witnesses. *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965).

The art of cross-examination provides counsel with the opportunity to test a witness' veracity and credibility and to discredit the witness' testimony as is necessary. *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353. An acceptable method of impeaching one's testimony is by showing "that a witness has bias or prejudice toward one of the parties or has a personal interest in the outcome of the case which can be expected to color his [or her] testimony and undermine its reliability." *Eckhart*, 117 R.I. at 435, 367 A.2d at 1075. Indeed the Supreme Court has stated that

> "[t]he partiality of a witness is subject to exploration at trial, and is 'always relevant as discrediting the witness and affecting the weight of his [or her] testimony.' * * * [T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Davis*, 415 U.S. at 316–17, 94 S. Ct. at 1110, 39 L. Ed.2d at 354.

Although the permissible scope and extent of cross-examination lies within the sound discretion of the trial justice, *State v. Benevides*, 420 A.2d 65, 69 (R.I.1980), we are mindful of the Supreme Court's pronouncements in *Davis* and in *Alford v. United States*, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624 (1931). In each of those cases the Supreme Court found that a cross-ex-

---

**1.** The petition alleging that respondent committed a crime of violence while armed with a firearm, in violation of G.L.1956 (1981 Reenactment) § 11–47–3, as amended by P.L.1989, ch. 544, § 1, was withdrawn by the state prior to trial. After the close of the state's case in chief, the trial justice granted respondent's motion for judgment of acquittal with respect to the petition alleging the unlicensed carrying of a handgun, in violation of § 11–47–8, as amended by P.L.1988, ch. 389, § 1.

aminer should be afforded ample opportunity to develop the issues of bias, prejudice, and motivation properly before the jury. *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355; *Alford*, 282 U.S. at 692, 51 S.Ct. at 219, 75 L.Ed. at 628. In the case before us respondent's counsel was prohibited from recalling Morris the day after his direct examination and cross-examination, and therefore, he was denied the opportunity to present to the jury the possibility that Morris was giving his testimony in the expectation of favorable treatment from the state and/or in exchange for lenient sentences on four felony charges. Although it is sheer speculation that the jury would have accepted this line of reasoning had it been adduced at trial, we believe that the members of the jury were entitled to consider the defense theory so that they could make an informed judgment about the weight to place on Morris' testimony. *Davis*, 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354.

 In light of our finding that the respondent was denied his right to full confrontation, we turn now to the question of whether further cross-examination would have altered the jury's verdict in this case. *See State v. Squillante*, 622 A.2d 474, 479 (R.I.1993) (delineating factors to be considered by this court in reviewing the prejudice suffered by a defendant who is denied his or her right to full confrontation). We find that the exclusion of Morris' alleged bias constitutes prejudicial error wherein Morris was only one of two witnesses who placed the respondent at the scene of the crime and wherein the respondent's counsel was entirely precluded from cross-examining Morris upon counsel's discovery of his recent pleas on four felony charges. With respect to Perry's alleged bias, however, we find that the respondent was not overly prejudiced by its exclusion. Although we recognize that Perry was the other witness who placed the respondent at the scene of the crime, we must note that the identification of the respondent was not presented to the jury until the state was forced to introduce Perry's prior inconsistent statement. In view of Perry's evasive testimony during the state's case in chief, we are not persuaded that further cross-examination on Perry's alleged bias toward the state would have changed the outcome of the case. *See Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686 (1986) (inquiring into the outcome of a case under the assumption that the damaging potential of a witness' cross-examination was fully realized).

Accordingly the respondent's appeal is sustained. The judgments of convictions appealed from are vacated, and the papers in this case may be remanded to the Family Court for a new trial.

LEDERBERG, J., did not participate.