**STATE of Rhode Island**

**v.**

**Jose DOCTOR and Alexis Doctor.**

**No. 92–597–C.A.**

Supreme Court of Rhode Island.

July 8, 1994.

---

Aaron L. Weisman, Annie Goldberg, Asst. Attys. Gen., Providence, for plaintiff.

Susan Iannitelli, Iannitelli Law Offices, Smithfield, Richard M. Casparian, Public Defender, Paula Rosin, Chief Appellate Atty., Catherine A. Gibran, Asst. Public Defender, Providence, for defendants.

## OPINION

SHEA, Justice.

Following a joint trial, a Superior Court jury found both defendants, Jose and Alexis Doctor, guilty of the first-degree murder of Willie Davis. The jury also found both defendants guilty of conspiring to commit the murder of Willie Davis and assaulting Ronald Nelson and Rodney Perry with the intent to murder. The trial justice sentenced both defendants to life imprisonment for the murder, with concurrent suspended sentences of five years for the conspiracy offense and ten years for each assault, to be served consecutively to the life term. On appeal both defendants assign error to the trial justice's limitation of their cross-examination of one of the state's witnesses. Because we conclude that the ruling constituted reversible error, we do not reach defendant Alexis Doctor's other grounds for appeal. We reverse the convictions of both defendants and remand for new trials.

The dispositive issue in this case is whether the trial court's denial of defendants' attempts to cross-examine Kimani Morris regarding a written statement that he gave to police constituted reversible error. Resolution of this issue requires a preliminary review of the evidence presented at trial.

The charges against defendants stem from a shooting in Providence, Rhode Island, during the early morning hours of August 12, 1990. The trial testimony indicated that sometime after midnight, a station wagon containing six young men was halted in traffic near the corner of Globe and Eddy Streets. The station wagon, driven by Ronald Nelson, was enroute to a nearby tavern, Sonny and Dennis' Lounge. According to three of the vehicle's passengers, three young men armed with handguns approached the station wagon. Gunshots were fired into the vehicle, fatally wounding Willie Davis, who was in the front passenger seat. Rodney Perry, who was seated behind Willie Davis, suffered a gunshot wound to his right arm.

The state presented testimony from four of the passengers in the vehicle. Kimani Morris (Morris) was the first witness called at trial. Morris testified that Nelson was driving the vehicle, and the other front-seat passengers were Mark Ellis in the middle, and Willie Davis on the right. Morris stated that he was seated behind Nelson, with John Norman in the middle of the back seat and Rodney Perry on the right. Morris testified that Alexis Doctor and Douglas L., a juvenile, approached the vehicle's passenger side and fired into the car.[1] Morris stated that after ducking down to avoid the gunfire, he looked up to the left of the car and saw Jose Doctor firing a gun a couple of times.

John Norman was the next passenger to testify. He also identified the three young men who approached the vehicle as Alexis Doctor, Jose Doctor, and Douglas L., the

---

1. Douglas L., the juvenile, was tried in the Family Court for charges related to the murder of Willie Davis and the assault of the other passengers. *See In re Douglas L.,* 625 A.2d 1357 (R.I. 1993). Curiously, the facts presented in the Family Court trial indicated only four passengers in the car: Nelson, Davis, Morris, and Perry. *Id.* at 1358.

juvenile. Norman testified that although he saw Alexis Doctor firing into the car and the juvenile with a gun in his hand, he did not see Jose Doctor fire a gun. The prosecutor then encountered difficulty presenting the testimony of two other passengers, Rodney Perry and Ronald Nelson.

Perry, who suffered a gunshot wound during this incident, refused to testify because he did not want to incriminate himself. Over a defense objection, the trial justice later permitted the state to read to the jury portions of Perry's testimony given at a bail hearing for Jose Doctor and a joint Family Court hearing concerning Alexis Doctor and the juvenile. In this prior testimony Perry stated that both Alexis Doctor and the juvenile fired guns into the car but that he did not see Jose Doctor with a gun or shooting. Nelson testified that the car he was driving was shot at, and that "three guys" had run up to the car, but that he could not identify who the men were or who fired the shots. Nelson was an uncooperative witness whom the prosecutor described in his closing argument as "absolutely evasive, disrespectful to this Court and disrespectful to you [the jury]." The state's other witnesses were three Providence police officers, the acting director of the State Crime Lab, and the former Chief Medical Examiner for Rhode Island.

The issue giving rise to this appeal developed during defense counsels' cross-examination of Morris concerning a statement that he gave to the police. At trial the prosecutor objected to both defense counsels' questions concerning the following portion of Morris's typewritten statement:

"He [Jose Doctor] ran up to Ron Nelson and Shot in and Ron ducked I was sitting behind Ron in the car i ducked to and Jose Doctor ran around the car toward the back where I was still shooting."

The statement, which was typed by a Providence police detective, contains spelling and punctuation errors throughout. During cross-examination of Morris, trial counsel for Jose Doctor laid an adequate foundation that Morris had made a statement to police and that defendants' exhibit A was that typewritten statement. Defense counsel also elicited the testimony that neither Morris nor anyone else in the car had weapons or were shooting from the car. Before defense counsel could question Morris regarding his prior statement "where I was still shooting," the prosecutor lodged his objection. Counsel for Alexis Doctor later attempted the same line of questioning with the same result.

The prosecutor based his objection to the cross-examination on the ground that Morris's prior statement presented no inconsistency. Defense counsel argued that the statement "I was still shooting" was inconsistent with Morris's testimony during cross-examination that Morris had not been shooting from the car. The trial court, however, reasoned that because Morris's testimony that he did not fire from the car was developed on cross-examination, his testimony was a collateral matter not subject to impeachment through prior inconsistent statements. In sustaining the state's objection, the trial court relied on this court's decision in *State v. Bowden*, 439 A.2d 263 (R.I.1982), but granted a recess to allow trial counsel to review *Bowden* and present further argument. Following the recess, defense counsel argued that even if Morris's statement concerned a collateral matter, Rule 611(b) of the Rhode Island Rules of Evidence permits cross-examination into matters affecting a witness's credibility as if on direct examination. The trial court, however, affirmed its earlier ruling sustaining the state's objection to the defense cross-examination.

On appeal both defendants argue that the trial court erred when it prohibited cross-examination about a relevant inconsistent statement made by Morris. The defendants contend that the ruling infringed upon their constitutional rights to confront a witness against them and that it was not harmless beyond a reasonable doubt. The state argues on appeal that Morris's written statement contains an obvious punctuation error that mars an otherwise perfectly consistent statement. The state would add commas to convert Morris's statement from "Jose Doctor ran around the car toward the back where I was still shooting" to "Jose Doctor ran around the car toward the back, where I was, still shooting." The state argues that

the missing commas, or some similar punctuation, would alter the phrase from one indicating that Morris had been firing from the car to one locating Jose Doctor's position relative to Morris. The state further argues that even if the trial court erroneously excluded the allegedly inconsistent statement, such a ruling could not reasonably have caused the jury to return a different verdict.

■ The admissibility of a witness's prior inconsistent statement is governed by the Rhode Island Rules of Evidence. Rule 801(d)(1)(A) provides that a prior statement by a witness that is inconsistent with the witness's testimony is admissible as substantive evidence if the witness testifies at trial and is available for cross-examination. *State v. Pusyka*, 592 A.2d 850, 853 (R.I.1991). In the case at bar the prosecutor's objection and the trial justice's initial ruling were based on the absence of inconsistency.

■ After reviewing the record, we are of the opinion that the prosecutor had absolutely no grounds upon which to base his objection. The statement "where I was still shooting" is on its face clearly and plainly inconsistent with Morris's cross-examination testimony that he was not shooting from the car. This court and the trial court must not engage in guessing whether the police detective who typed Morris's statement mistakenly omitted a comma or what Morris may have meant by his statement. Such factual determinations are strictly within the purview of the jury or the trier of fact. *Fontaine v. State*, 602 A.2d 521, 526 (R.I.1992); *State v. Dame*, 488 A.2d 418, 422 (R.I.1985); *see also School Committee of North Providence v. North Providence Federation of Teachers*, 468 A.2d 272, 275 (R.I.1983) (stating factual disputes are the sole province of the finder of fact). The prosecutor's objections precluded what would have been an easily resolved question of whether Morris's statement was in fact inconsistent.

■ Although the prosecutor's objection was based on the absence of inconsistency, the trial court ruled that the cross-examination was impermissible because it concerned a collateral matter. Morris's statement, however, did not relate to a collateral matter.

The fact that Morris may have been shooting from the car during the fatal attack on Willie Davis was materially inconsistent with the trial testimony that the car's passengers were unarmed and surprised by the attack, and was therefore relevant to the defense. *See* R.I.R.Evid. 401 (defining relevant evidence as that "having any tendency to make the existence of *any* fact that is of consequence * * * more *or less* probable"). It was error to preclude the exploration of the apparent prior inconsistent statement. The entire issue could have been put to rest with a few questions and answers.

■ A defendant's right to cross-examination of witnesses is guaranteed by the confrontation clause in the United States Constitution and in the Rhode Island Constitution. U.S. Const.Amend. VI; R.I.Const. art. 1, sec. 10; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974); *State v. Anthony*, 422 A.2d 921, 924 (R.I. 1980). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination." *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674, 684 (1986). A violation of the confrontation clause, however, does not warrant reversal if a reviewing court finds the error was harmless beyond a reasonable doubt. *Id.* at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87; *see also State v. Canning*, 541 A.2d 457, 461 (R.I.1988). In the present case we cannot find that this error was harmless beyond a reasonable doubt.

The majority opinion in *Van Arsdall* stated that the harmless-error determination "depends upon a host of factors." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438, 89 L.Ed.2d at 686–87. The Court then provided the following five factors to illustrate what appellate courts should consider: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.* A review of these factors

alone leads to the conclusion that the limitation of cross-examination in the present case was not harmless beyond a reasonable doubt.

Morris's testimony was quite important to the prosecution's case. Morris was the first witness called by the state and his testimony was described by the prosecutor as "[n]ot evasive, not inconsistent." Morris testified on direct examination that he saw Jose Doctor firing a gun at the car. Morris was the only witness who testified that he saw Jose Doctor fire a gun. Ronald Perry's testimony, which was read to the jury, indicated that Perry did not see Jose Doctor fire a gun or have a gun in his hand. Morris's testimony, therefore, was not cumulative regarding whether Jose Doctor fired a gun. Corroborating evidence was presented through John Norman, but the state encountered difficulty presenting the testimony of Nelson and Perry, and did not present eyewitnesses from the traffic outside the lounge on the night of the attack. The amount of corroborating evidence was not so extensive as to render the impeachment of Morris with prior-inconsistent-statement evidence unimportant. Defense counsel did have the opportunity to cross-examine Morris regarding his ability to perceive the events on the night of the attack and also regarding his prior criminal record. Their cross-examination was cut short, however, regarding the highly relevant area that the witness himself may have been firing a gun at the defendants during the attack. We agree with the defendants that evidence of gunfire coming from the victim's car would have undermined the state's first-degree-murder case because such evidence implies a question of self-defense or absence of premeditation. Even in light of the overall strength of the prosecution's case, we cannot speculate about the effect that testimony concerning a key witness's alleged retaliatory or preemptive gunfire may have had on the jury. *See Davis,* 415 U.S. at 317, 94 S.Ct. at 1111, 39 L.Ed.2d at 354 (refusing to speculate whether jury would have accepted counsel's reasoning had the trial court permitted the cross-examination).

For these reasons the defendants' appeals are sustained, the judgments of the Superior Court are vacated, and the cases are remanded to the Superior Court for new trials consistent with this opinion.