**STATE**

v.

**Dennis EVANS.**

**No. 95–709–C.A.**

Supreme Court of Rhode Island.

Feb. 1, 1999.

Jane M. McSoley, Aaron L. Weisman, Providence, for Plaintiff.

Richard K. Corley, Providence, for Defendant.

Present WEISBERGER, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case represents what the trial justice described as the defendant's obvious attempt to parlay his good fortune in one robbery case, which we overturned due to the state's negligent failure to comply with discovery obligations, into the present case "by misleading the Supreme Court into believing that both cases had the same discovery failure and defect." Having already remanded this case twice to the trial justice for his further consideration, we now conclude that the third time is not a charm for this defendant, and affirm his conviction. Because the posture of the instant appeal is so inextricably linked to this Court's reversal of the previous robbery case, a complete discussion of both cases is required. We do so below.

### Factual and Procedural History

On August 19, 1988, a lone masked gunman entered the East Providence Hospital Trust Bank carrying a white plastic shopping bag. The gunman quickly approached the bank's tellers and after failing on his first attempt to vault over the counter, the undeterred gunman once again attempted to leap the counter, this time successfully. The gunman immediately ordered the bank's tellers to open "both drawers" and "not to push the

[alarm] buttons." Thereafter, the gunman approached four of the bank's tellers, made a cash withdrawal at each of their stations, and deposited the contents into his shopping bag. After completing these transactions, the gunman hurdled the tellers' counter once again and walked out of the bank.

Throughout the bank robbery, one of the bank's tellers, Maria Quintanilha (Quintanilha), had been concentrating on the perpetrator's face. Moreover, after the gunman exited the bank, Quintanilha was given an additional four to five seconds with which to view the robber's unobstructed face when he passed by a large window and removed his mask. Quintanilha later explained that the gunman had distinctive eyes, "the kind of eyes that you can pick from a crowd," and she explained to the police that if given the opportunity to view the perpetrator again, she could identify him.

Police transported Quintanilha to their East Providence station where she assisted in the composite drawing of the gunman, a drawing that was so accurate that the trial justice later would comment "that the trial jury must certainly have viewed [the drawing] as if they were actually watching [defendant] looking at himself into a mirror." However, when shown a photographic array, Quintanilha was unable to identify the bank robber, and the August 19, 1988 crime remained unsolved.

Nearly six months later, on February 10, 1989, police again converged on the East Providence Hospital Trust Bank to investigate another robbery, this time by two masked men in their early twenties. Quintanilha informed the police that the mask of one of the perpetrators was so transparent that it did not conceal his facial features, and she subsequently described an olive-complected man with a thin mustache and black hair. In an attempt to identify the two February 10, 1989 perpetrators, Quintanilha again agreed to visit the East Providence police station, although unlike her previous attempt to identify the August 19, 1988 bank robber, this visit proved more fruitful. Quintanilha positively identified a photograph of Dennis Evans (Evans), defendant in this case, not as one of the February 10, 1989 bank robbers, but as the lone August 19, 1988 gunman. The following day, Quintanilha was shown another photographic array and identified David DiLibero (DiLibero), who was the boyfriend of Evans' daughter, Dawn Evans, as one of the February 10, 1989 bank robbers.

Armed with this latest information and a warrant, police conducted a search of the apartment where DiLibero and Dawn Evans resided, and discovered incriminating evidence. In particular, the search revealed a handgun and a letter written by defendant Evans (while he was incarcerated at the Adult Correctional Institutions) to his daughter Dawn. Evans' letter, which was written one day after the February 10, 1989 bank robbery, advised his daughter on avoiding detection by "[m]ak[ing] sure the wrappers are gone." Evans also provided sound fatherly advice not to spend the stolen money too freely, and "to put some [money] aside for a lawyer [and] bail [in case] anything ever goes wrong."

On May 24, 1991, something did go wrong, a Providence County grand jury returned a three-count indictment against Evans, charging him with the August 19, 1988 bank robbery, aiding and abetting the February 10, 1989 bank robbery, and conspiracy to commit robbery.[1] A six-day jury trial was held during which the evidence against Evans was, as the trial justice would later term, "overwhelming."

Quintanilha testified regarding the accuracy of security camera photographs taken during the August 19, 1988 bank robbery. These photographs depicted the bank robber holding his left arm at a ninety-degree angle. Later, Doctor Thomas Bliss, an orthopedic surgeon, testified that one-month prior to the August 19, 1988 bank robbery, he had treat-

1. The grand jury also returned a two-count indictment against Dawn Evans for conspiracy to commit robbery and aiding and abetting the February 10, 1989 bank robbery; a five-count indictment against DiLibero for two-counts of conspiracy to commit robbery and three-counts of robbery (one of which was the February 10, 1989 bank robbery); and a two-count indictment against another individual.

ed Evans for two broken arms, and that Evans' left arm had been placed in a nonremovable fiberglass cast and set at a ninety-degree angle. Doctor Bliss was also shown a security camera photograph in which he stated that "a whiteness that covers the back of the [robber's] hand and goes over the wrist" was consistent with the placement of the nonremovable fiberglass cast on Evans' left arm during his last examination on August 17, 1988. Furthermore, the state introduced the eyewitness testimony of Quintanilha, and the testimony of Darrell Kroll (Kroll), who stated that one day as he and Evans drove past the East Providence Hospital Trust Bank, Evans boasted of having robbed that bank.

Evans and his defense counsel were unable to overcome the onslaught of incriminating evidence. As a result, a Providence County Superior Court jury convicted Evans of the August 19, 1988 bank robbery, although it was unable to reach a verdict on charges that he aided and abetted the February 10, 1989 bank robbery.[2] After denying defense counsel's motion for a new trial, the trial justice sentenced Evans to serve fifty years at the Adult Correctional Institutions. Evans promptly appealed.

While Evans' August 19, 1988 bank robbery conviction (hereafter East Providence bank robbery case) was pending appeal before this Court, Evans commenced trial on another unrelated bank robbery charge. In that case, an individual entered the Fleet National Bank in Warwick on August 9, 1991 (hereafter Warwick bank robbery case), armed with a gun in one hand and a shopping bag in the other. See State v. Evans, 668 A.2d 1256, 1257 (R.I.1996) (Evans I). The gunman jumped over the counter and ordered the tellers to stuff the shopping bag with money. Id. After the bag was filled, the gunman fled the bank and escaped. Id. Almost immediately, Evans and Kroll became suspects, and when Kroll was subsequently questioned, he not only admitted to participating in the Warwick bank robbery, but he also identified Evans as the gunman. Id. at 1258. In exchange for his cooperation,

Kroll received a lenient sentence; however, he also apparently realized the benefits of providing law enforcement officials with pertinent information and thereafter agreed to furnish authorities with additional information regarding numerous unsolved crimes throughout the state. Id. This new information presumably led to an indictment of Evans on five counts of robbery, including the Warwick bank robbery, and one count of conspiracy to commit robbery. Id.

In preparation for Evans' Warwick bank robbery trial, and while Evans' East Providence bank robbery conviction was pending before this Court, the state listed Kroll as a witness whom it intended to call. Id. In three separate pretrial motions made pursuant to Rule 16 of the Superior Court Rules of Criminal Procedure, Evans requested that the state provide him with " 'all oral and/or written promises made to Daryl [sic] Kroll by members of the Warwick Police Department and/or the Department of the Attorney General.' " Id. In response to these three motions, the state erroneously indicated that " 'there has been no statements or promises, inducements, or rewards of any kind or nature made to any witness or witnesses that the state intends to rely upon.' " Id. In addition, Evans requested that the state provide him with any exculpatory evidence in its possession, which the state responded to by producing certain documents, including what eventually became known as an incomplete criminal record for Kroll. Id. Based upon these representations, trial commenced on February 1, 1994. Id.

Prior to Kroll's anticipated testimony in the Warwick bank robbery trial, the state argued a motion in limine to preclude the defense from impeaching Kroll with respect to certain convictions contained within his criminal record. Id. In response, defense counsel informed the court that the state had failed to disclose both Kroll's entire criminal record and any promises and/or inducements made to Kroll. Id. Specifically, defense counsel stated that: (1) he had independently uncovered four additional Providence indictments against Kroll, which had not been

---

**2.** During the trial Evans pressed a motion for judgment of acquittal on the charge of conspira-

cy to commit robbery, which the trial justice granted.

disclosed; and (2) he had discovered the state had made an arrangement with Kroll whereby in exchange for his testimony against Evans, he would receive a twenty-five year sentence, with only five years to serve for his involvement in the Warwick bank robbery. *Id.* Moreover, defense counsel asserted that the state had failed to disclose an agreement whereby Kroll's Warwick bank robbery sentence would run concurrently with any other sentences that Kroll may receive from any other pending criminal informations or indictments. *Id.* Following an evidentiary hearing the aforementioned nondisclosures were confirmed, and it was further learned that the state had failed to disclose: (1) its agreement to write a favorable letter to the parole board on Kroll's behalf; and (2) its offer to place Kroll in protective custody upon request. *Id.*

Based upon these nondisclosures, Evans sought to exclude Kroll's testimony. *Id.* at 1259. The trial justice, however, disagreed and stated that even though the state had failed to exercise due diligence, and was in fact negligent in responding to the defense's discovery requests, Evans had suffered no prejudice " 'because it was the defense that brought most of these materials to light.' " *Id.* After denying the motion to exclude Kroll's testimony, the trial justice denied Evans' motion for a mistrial, and Kroll became the sole witness implicating Evans in the Warwick bank robbery. *Id* . Subsequently, a Kent County Superior Court jury found Evans guilty of conspiracy to commit robbery, but acquitted him on all counts of robbery. *Id.* Evans appealed.

Following Evans' Warwick conviction, both the East Providence bank robbery conviction and the Warwick conspiracy to commit robbery conviction were pending appeal before this Court. On July 19, 1994, Evans filed a motion to remand the East Providence bank robbery case to the Superior Court for the limited purpose of filing a second motion for a new trial based upon the newly discovered evidence adduced at the Warwick bank robbery trial, namely the state's failure to disclose Kroll's entire criminal record and the state's failure to disclose any inducements or promises made to Kroll in exchange for his

testimony. We granted Evans' motion and remanded the papers in the East Providence bank robbery case to the trial justice.

As mandated, the trial justice conducted a second hearing for a new trial, and on September 7, 1995, he issued a written decision in which he found that the state had failed to disclose its promise to write a favorable letter to the parole board on Kroll's behalf. Despite this omission, the trial justice stated that the newly discovered promise represented "cumulative impeaching evidence and is so insignificant when viewed against the overwhelming independent evidence of [Evans'] guilt that under no imaginable circumstances would it probably change the verdict at a new trial." Consequently, the trial justice denied Evans' motion for a new trial, and thereafter the papers in that case where returned to this Court. As a result, the East Providence bank robbery case and the Warwick conspiracy to commit robbery case were once again both pending appeal.

On December 6, 1995, we heard oral arguments in the Warwick case, and on January 11, 1996, we issued an opinion (*Evans I* ), which vacated that conviction due to the state's negligent failure to comply with Rule 16. We stated that:

> "[f]rom the record before us it is apparent that the midtrial disclosure of Kroll's criminal record, as well as the details concerning the deal the state had made with him, denied defense counsel the opportunity to marshal the information in an orderly fashion. Kroll was the only witness offered by the state who implicated [Evans] in the robbery, and therefore, impeaching him before the jury was crucial to [Evans'] case." *Evans I*, 668 A.2d at 1260.

Nearly one year after we vacated the Warwick conspiracy to commit robbery conviction in *Evans I*, the East Providence bank robbery conviction came before us pursuant to an order assigning that matter to the show-cause calendar. During oral argument in that case, the state was unable to answer specific questions "concerning whether it had disclosed any and all other promises and agreements to provide Kroll with additional favorable consideration in exchange for his testifying against [Evans]." Accordingly, we

again remanded the East Providence bank robbery case to the trial justice for additional findings, and for further consideration of Evans' motion for a new trial in light of our opinion in *Evans I.*

On September 30, 1997, the trial justice issued a second well-reasoned written decision in which he found that the state's nondisclosure of its promise to write a favorable letter to the parole board, and its failure to disclose its agreement to place Kroll in protective custody upon request, amounted to "two somewhat inconsequential facts [that] did not and could not in any meaningful manner detrimentally affect or prejudice Evans in his trial on the East Providence robbery charge." The trial justice added that:

"[u]nlike the Warwick case in which Kroll was the sole witness implicating Evans in that bank robbery, and where several pending state indictments against Kroll, as well as some federal charges allegedly had not been made known to defense counsel or the trial jury, * * * in this [the East Providence bank robbery] case, Evans was convicted not on Kroll's testimony, but instead, conclusively upon the clear and uncontradicted eye witness [*sic*] testimony of Maria Quintanilha, the young bank teller who looked at Evans' face and into his eyes as he stood next to her while robbing the bank."

Furthermore, the trial justice noted that in the instant case, the defense did in fact cross-examine Kroll regarding several pending state indictments. As a result, the trial justice, although acknowledging that the promised letter to the parole board and the state's agreement to place Kroll in protective custody upon request were "newly discovered after trial," found that these two omitted disclosures were "nothing more than mere inconsequential cumulative impeaching evidence." Accordingly, the trial justice denied Evans' motion for a new trial, and the papers were returned to this Court.

## Analysis

On appeal, Evans cites to numerous alleged nondisclosures and claims that, similar to the Warwick conviction that we vacated in *Evans I,* the instant case suffers from the same infirmity, and thus should meet the same fate. Among the nondisclosures that Evans claims prejudiced this case were: (1) the state's criminal records that incorrectly indicated that Kroll had been charged with arson on July 15, 1991; (2) the state's failure to disclose that Kroll had been charged with an armored car robbery; and (3) the state's failure to reveal its agreement to sentence Kroll to a twenty-five year term, with only five years to serve for his participation in the Warwick robbery, while also receiving concurrent sentences in all pending cases that had not been dismissed. In addition, Evans asserted, and the trial justice found, that the state did not disclose its promise to write a favorable letter to the parole board on Kroll's behalf, and that the state did not reveal its agreement to place Kroll in protective custody. Evans claims that had these facts been disclosed "[d]efense [c]ounsel would have been able to destroy the credibility of the one witness [Kroll who] testified that Dennis Evans was the robber of the bank in this case." We disagree.

At the outset we must dispel two important myths offered by Evans. First, Evans argues that he was prejudiced because the state's criminal records indicated that Kroll had committed arson on July 15, 1991, instead of the actual offense date of August 16, 1991. Evans claims that this discrepancy is significant because if the correct offense date had been disclosed, "[defense] counsel would have been able to confront [Kroll] with the fact that he had agreed to cooperate with the police and become a State's witness only hours after committing this offense." After reviewing the record in this case, however, we are of the opinion that defense counsel did confront Kroll with this fact. We highlight the following colloquy:

**Defense Counsel:** "Okay. And when you say you cooperated with law enforcement, was that in August of '91?"

**Kroll:** "Yes, sir."

**Defense Counsel:** "And was it then that you decided that you were going to talk to the Department of Attorney General to see if you could resolve some of your problems?"

Kroll: "Not exactly on August of '91, but yes, after that date. The exact date, I don't know. *I was arrested on August 17th, 1991.*"

Defense Counsel: "Okay. So you were arrested on a particular day?"

Kroll:"Yes, sir."

Defense Counsel: "*And shortly thereafter you made some arrangement to talk with the Department of Attorney General; is that right?*"

Kroll: "*Yes, sir.*" (Emphases added.)

The second myth we wish to cast away concerns Evans' contention that the jury never learned of the state's recommendation that Kroll receive concurrent sentences on all pending charges. During cross-examination, defense counsel queried Kroll regarding four pending state indictments, and in response Kroll not only admitted to the charges, but asserted that he was expecting a favorable recommendation by the Attorney General's office because of his cooperation. The trial justice then questioned Kroll regarding his expectations within the jurors' presence:

The Court: "All right. Let me just make certain I understand this. You say the arrangement you have with the Attorney General is what?"

Kroll: "To cooperate fully, to testify in all criminal matters that I have knowledge of."

The Court: "And what are you expecting in return?"

Kroll: "The same sentence that I'm currently serving."

The Court: "The same sentence?"

Kroll: "To run concurrent."

The Court: "The same sentence, which is what, a 25 year sentence, five to serve, twenty suspended?"

Kroll: "Yes, sir."

As a result of these two colloquies, we conclude Evans' assertions that: (1) the jury did not learn of Kroll's decision to cooperate with police shortly after his August 17, 1991

arrest; and (2) the jury was led "to believe that Kroll was receiving nothing other than the five-year sentence for the [Warwick] robbery in exchange for his testimony" are simply without merit.

Having addressed these preliminary matters, we shall next address the remaining nondisclosures, which include the armored car robbery charge, the dismissal of two pending cases against Kroll,[3] the promised letter to the parole board, and the state's agreement to place Kroll in protective custody.

■■■ As this Court previously stated in *State v. Vendetti*, 655 A.2d 686 (R.I.1995): "Under [*State v.*] *Brown*, [528 A.2d 1098 (R.I.1987) ] newly discovered evidence serves as the basis for a new trial if it satisfies a two-part test. The threshold test consists of four factors: (1) the evidence must actually be newly discovered since trial, (2) the defendant must have been diligent in attempting to discover the evidence for use at the original trial, (3) the evidence must not be merely cumulative or impeaching but must be material to the issue, and (4) the evidence must be of the kind that would probably change the verdict at a new trial. *Id.* at 1104. If the evidence satisfies this threshold test, the second part of the test requires the trial justice to decide whether the evidence is credible enough to warrant a new trial. *Id.* When making this assessment, the trial justice must exercise his or her independent judgment about the credibility of witnesses and the weight to be given their testimony." *Vendetti*, 655 A.2d at 687 (quoting *State v. Estrada*, 537 A.2d 983, 986 (R.I.1988)).

■ Applying this standard, we conclude that the newly discovered evidence in this case was merely cumulative and impeaching, and therefore does not warrant a new trial. During cross-examination, defense counsel explored Kroll's criminal history *ad nauseam*. The seemingly endless parade of criminal offenses began in May 1978 with

3. After reviewing the record it appears that Kroll was never charged in connection with two offenses. Apparently, the state's decision not to prosecute Kroll was based upon economy of scale since the focus of that investigation was another individual who ultimately disposed of all pending cases by way of a plea agreement.

Kroll pleading *nolo contendere* to two counts of burglary, and ended in June 1986 with convictions for possession and distribution of counterfeit currency. Sandwiched in between these criminal offenses were *nolo contendere* pleas to malicious destruction of property, assault with a dangerous weapon, robbery, conspiracy, possession of marijuana, and four counts of burglary. Moreover, the jury learned of four pending indictments against Kroll, which included single counts for first-degree arson and conspiracy to violate the controlled substance act, as well as two counts for robbery and harboring, and six counts for conspiracy.

■ Clearly, defense counsel was successful in alerting the jurors that Kroll was an individual who was well-acquainted with the criminal-justice system. Defense counsel's argument that had the jurors been informed of the armored car robbery indictment, it too could have been used to impeach Kroll's credibility, is "tantamount to our accepting a belief that if one were to paint one additional black stripe on a zebra, it would serve to disguise the zebra and conceal its identity as a zebra."[4] *Mastracchio v. Moran*, 698 A.2d 706, 714 (R.I.1997). Simply stated, if the prior twenty-five criminal offenses did not impeach Kroll's credibility, there was no chance that either evidence of a twenty-sixth criminal charge, or evidence that two previous criminal charges had been dismissed, would have done so. Moreover, we are convinced that the nondisclosure of the promised letter to the parole board, and the state's offer to place Kroll in protective custody, were not only cumulative and impeaching, but also not material. *See id.*

In *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), the United States Supreme Court stated that the:

"touchstone of materiality is a 'reasonable probability' of a different result * * *. The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence. A 'reasonable probability' of a different result is accordingly shown when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.' * * * A defendant need not demonstrate that after discounting the inculpatory evidence in light of the undisclosed evidence, there would not have been enough left to convict. The possibility of an acquittal on a criminal charge does not imply an insufficient evidentiary basis to convict. One * * * [must show] that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Id.* at 434–35, 115 S.Ct. at 1566, 131 L.Ed.2d at 506 (quoting *United States v. Bagley*, 473 U.S. 667, 678, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481, 491 (1985)).

Here, although we acknowledge that the state's failure to disclose both the promised parole board letter and the offer to place Kroll in protective custody does indeed constitute newly discovered evidence, we are of the opinion that these nondisclosures do not undermine the confidence in this verdict. In fact, we believe the jury would have reached the same result even without Kroll's testimony because unlike *Evans I* where Kroll was the sole witness implicating Evans, Evans' fate in this case was sealed by the Quintanilha identification, the security camera photographs, Dr. Bliss' testimony, and Evans' own letter to his daughter.

### Conclusion

For the foregoing reasons, the defendant's appeal is denied and dismissed. The judgment appealed from is affirmed and the papers in this case are remanded to the Superior Court.

Justice BOURCIER did not participate.

---

4. We also note that the armored car robbery charge did not mature into an indictment until five weeks *after* the East Providence bank robbery trial had concluded.