Dennis R. EVANS

v.

A.T. WALL, Director
of the Department
of Corrections.

No. 2004–276–Appeal.

Supreme Court of Rhode Island.

Dec. 4, 2006.

James T. McCormick, Providence, for Plaintiff.

Jane M. McSoley, Providence, for Defendant.

Present: WILLIAMS, C.J., FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice SUTTELL, for the Court.

The applicant, Dennis R. Evans, appeals from the Superior Court's denial of his application for postconviction relief. This case came before the Supreme Court for oral argument pursuant to an order directing the parties to show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are of the opinion that this appeal may be decided at this time, without further briefing or argument. For the reasons set forth herein, we affirm the judgment of the Superior Court.

### Facts and Procedural History

This Court previously recounted the underlying facts of this case in *State v. Evans*, 725 A.2d 283 (R.I.1999) (*Evans II*); therefore, we undertake only a minimal review of the facts pertinent to Evans's application for postconviction relief. On August 19, 1988, a lone masked gunman entered the East Providence branch of the then Rhode Island Hospital Trust Bank,

vaulted over the counter and removed cash from the stations of four bank tellers. The gunman put the money in a shopping bag, propelled himself over the counter again and walked out of the bank, pulling his mask off as he hurried past one of the bank's large windows.

One of the tellers, Maria Quintanilha, was concentrating on the gunman's face the entire time and, even though he had been masked while in the bank, she was confident she could identify him if given the opportunity to see him again. Quintanilha attributed her confidence primarily to her memory of the gunman's eyes, which she told police were "the kind of eyes you can pick from a crowd." *Evans II*, 725 A.2d at 285. Also, she testified that she had observed the gunman's unmasked face in profile as he had passed the window. Although Quintanilha did not find a match for the gunman when she viewed a photo array at the police station, she did assist police in producing a composite sketch that was such a close likeness to Evans that the trial justice later remarked that "the trial jury must certainly have viewed the drawing as if they were actually watching [defendant] looking at himself into a mirror." *Id.*

Almost six months later, on February 10, 1989, Quintanilha witnessed another robbery while working at the same Hospital Trust branch in East Providence. Quintanilha again went to the police station to view a photo array, and this time she did see a face she recognized. Quintanilha picked out a photo of Evans and told the officers that he had been the lone gunman in the *August 19* robbery.

In May 1991, a Providence County grand jury indicted Evans for the August 19, 1988 robbery, as well as for aiding and abetting and conspiracy to commit robbery in connection with the bank heist on Feb-

ruary 10, 1989.[1] At trial, in addition to Quintanilha's identification, the state presented the testimony of Dennis Kroll, a confederate of Evans's and his alleged accomplice in yet another robbery, in Warwick, in 1991, and Dr. Thomas Bliss, an orthopedic surgeon who had treated Evans for compound fractures to both arms suffered in a motorcycle accident approximately one month before the 1988 East Providence robbery. After a six-day trial, the jury found Evans guilty of robbery, but was unable to reach a verdict on the aiding and abetting charge.[2] After denying Evans's motion for a new trial, the trial justice sentenced him to serve fifty years at the Adult Correctional Institutions (ACI).

This Court upheld the denial of Evans's motion for a new trial in *Evans II*. We then affirmed the judgment of conviction in *State v. Evans*, 742 A.2d 715 (R.I.1999) (*Evans III*).[3] Mr. Evans thereafter filed an application for postconviction relief in May 2000, alleging ineffective assistance of trial counsel. After a disagreement arose between Evans and the attorney representing him on the application, the hearing justice granted Evans's motion to remove counsel, and Evans proceeded to press his claim acting *pro se* with the assistance of standby counsel.

At the conclusion of the hearing, the hearing justice denied Evans's application, as well as his subsequent motion to reconsider. A judgment was entered on March 5, 2003, from which Evans timely appealed.

## Standard of Review

This Court has repeatedly held that we "will not disturb a trial justice's factual findings made on an application for postconviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence in arriving at those findings." *Bustamante v. Wall*, 866 A.2d 516, 522 (R.I.2005) (quoting *Taylor v. Wall*, 821 A.2d 685, 688 (R.I.2003)). "This Court will, however, 'review *de novo* any post-conviction relief decision involving questions of fact or mixed questions of law and fact pertaining to an alleged violation of an applicant's constitutional rights.'" *Id.*

## Discussion

When reviewing claims of ineffective assistance of counsel, this Court has adopted the standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

"A convicted defendant's claim that counsel's assistance was so defective as

1. Quintanilha had also identified David DiLibero as one of the perpetrators of the robbery on February 10. Mr. DiLibero was the boyfriend of Evans's daughter, Dawn Evans, at the time. That identification, coupled with an incriminating letter Evans wrote to Dawn, formed the basis for the aiding and abetting and conspiracy to commit robbery charges.

2. The trial justice granted Evans's motion for judgment of acquittal on the charge of conspiracy to commit robbery.

3. The somewhat unusual procedural history of this case is occasioned in large measure by our opinion in *State v. Evans*, 668 A.2d 1256 (R.I.1996) (*Evans I*), in which we vacated

defendant's conviction of conspiracy to commit robbery in the 1991 Warwick robbery because of the state's negligent failure to disclose Kroll's complete criminal record. In light of our opinion in *Evans I*, we remanded the East Providence bank robbery case to the trial justice for additional findings, and for further consideration of Evans's motion for a new trial. The trial justice again denied the motion, and we affirmed in *Evans II*. The defendant then raised other issues on appeal that were not decided in *Evans II*, but in *Evans III* this Court once again affirmed the judgment of conviction in the East Providence robbery.

to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."

Mr. Evans has consolidated the copious criticism he leveled at his trial attorney in his Superior Court application into four main issues on appeal. Mr. Evans alleges that trial counsel failed to: (1) impeach witness Quintanilha with previous inconsistent statements; (2) communicate properly with Evans during the course of his representation; (3) investigate and rebut apparently probative medical evidence; and (4) honor Evans's right to testify on his own behalf.

█ During the postconviction relief hearing, Evans's trial attorney admitted that he had not confronted Quintanilha on the witness stand with previous inconsistent statements she had made to police after the first East Providence robbery,[4] and he candidly acknowledged that the

inconsistencies could have been used to some effect in the cross-examination of Quintanilha. Indeed, the hearing justice said that, "if she was the only witness, the outcome for Mr. Evans at this hearing may [have been] favorable." However, as the hearing justice noted, "she wasn't the only witness."

This Court has held that under the *Strickland* standard, even if an applicant demonstrates that his trial counsel's efforts were so utterly lacking as to deny him the effective assistance of counsel, the applicant still must prove that " 'absent counsel's deficient performance, the result of the proceeding would have been different.' " *Bryant v. Wall*, 896 A.2d 704, 708 (R.I.2006) (quoting *Doctor v. State*, 865 A.2d 1064, 1068 (R.I.2005)). We agree with the hearing justice that Mr. Evans is unable to carry this prodigious burden successfully. Given the uncanny accuracy of the composite sketch Quintanilha helped a police artist render and given her ability to pick Evans out in a photo array after a different robbery about six months later, it is unlikely that the inconsistencies between her testimony and her earlier police statement would have impeached her credibility significantly. But even assuming, *arguendo*, that the inconsistencies would have substantially diluted the persuasive force of Quintanilha's damaging testimony, two additional witnesses—Kroll and Dr. Bliss—had helped seal Evans's fate. Kroll testified that Evans had boasted to him

4. Quintanilha's testimony at trial differed from her police statement in four respects: (1) She testified that the robber wore a baseball hat, but there was no mention of a hat in her statement. (2) She testified that when he walked past the bank window he removed his mask, but she did not remember which hand he used to do so. In her statement, she said he used his right hand to remove the mask. (3) She testified that the robber had "very light eyes * * * the kind of eyes that you can

pick from a crowd." In her statement she did not mention his eyes. (4) In her statement, she identified the robber as a "white male, about 23 or 24 years old." Evans was thirty-seven on August 19, 1988. We are disinclined to characterize all of the foregoing differences as inconsistencies; some of the differences between the trial testimony and the police statement do not contradict each other.

that he had robbed the Hospital Trust branch in East Providence and that his "method of robbing a bank was to wear a mask, leap over the counter, and take money only from the bottom of the cashier drawers because there were no dye packs in that money." *Evans III,* 742 A.2d at 718.

Further, Dr. Bliss's testimony dispelled any notion that Evans was physically incapable of committing the robbery as a result of his recent motorcycle accident. He offered his opinion that Evans's right arm would have supported his weight, at least to an extent that would have enabled him to vault over the bank counter. Doctor Bliss also was shown security camera photographs depicting the robber's left arm fixed at a ninety-degree angle, with some white material covering the back of the robber's hand, and he testified that the arm angle and white protrusion both were consistent with the non-removable fiberglass cast he had placed on Evans's left arm. In light of what the trial justice described as "overwhelming" evidence, we are not persuaded that, had the jury been aware of Quintanilha's inconsistencies, the outcome would have been any different.

■ Mr. Evans's second contention—that his trial attorney did not communicate with him sufficiently about his trial strategy—is also unavailing. Trial counsel testified that although he is "not a hand holder," he did meet with Evans before trial both at the prison and the courthouse. There is no bright line test readily available to determine whether Evans's trial counsel communicated reasonably with him in this case. Given the limited number of contacts between the two, Mr. Evans has raised a legitimate concern over the relatively scant opportunity he had to confer with his trial counsel before his day in court. However, he has failed to demon-

strate how the minimal contact of which he complains actually impaired his defense.

The United States Court of Appeals for the Sixth Circuit rejected an ineffective assistance of counsel claim brought on similar grounds:

"Even granting [defendant] the assumption that his relationship with his lawyers was not what it should have been, he has not shown how that failing affected the advocacy they provided him. *See Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988) ('in evaluating Sixth Amendment [right-to-counsel] claims, the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such') (quotation marks omitted). [Defendant] has given us no explanation how additional meetings with his counsel, or longer meetings with his counsel, would have led to new or better theories of advocacy or otherwise would have created a 'reasonable probability' of a different outcome. Under these circumstances, he cannot establish an essential prerequisite for relief—a showing of prejudice—and accordingly the claim cannot succeed." *Hill v. Mitchell,* 400 F.3d 308, 324–25 (6th Cir.2005).

We find this reasoning persuasive, and it is consistent with our own precedent. In *State v. D'Alo,* 477 A.2d 89, 92 (R.I.1984), we held that the defendant failed to prove that "decisions made and actions taken by his trial counsel as matters of trial strategy resulted from either neglect or ignorance" and, thus, the "decisions and actions did not constitute ineffective assistance of counsel." In Evans's case, he alleges that his infrequent contacts with trial counsel prevented him from being able to make an informed decision "as to whether or not he should plead guilty or go to trial, or whether or not he

should testify." Yet Evans himself has acknowledged that counsel communicated the state's plea offer to him, and counsel testified that the decision to go to trial was based solely on Evans's assertion of his innocence. Further, Evans attested to a contentious exchange he had with trial counsel over the wisdom of Evans's testifying in his own defense. It is clear that Evans discussed both of these issues with his attorney; it is unclear how his defense was prejudiced by the lack of further discussion. Although Evans undoubtedly would have appreciated more contact with his trial attorney, he has not shown that counsel's actions deprived him of a fair trial.

■ Mr. Evans also faults trial counsel for failing to investigate and rebut Dr. Bliss's opinion testimony that Evans was physically capable of vaulting over the bank counter, notwithstanding his injuries at the time. He argues that counsel should have obtained Evans's treatment records and consulted with a medical expert. At the postconviction relief hearing, trial counsel testified that he could not imagine how Evans's hospital records "could support any position that I was pursuing in the case." The significant question, he testified, was whether, on the day of the robbery, defendant's arm could have supported his weight sufficiently to jump over the counter, and "his treating physician [Dr. Bliss] was the only person that could have answered that." Upon review of the record, we are satisfied that trial counsel's decisions in this regard were tactical in nature and "do not by themselves constitute ineffective assistance of counsel." *Vorgvongsa v. State*, 785 A.2d 542, 549 (R.I.2001).

■ Finally, Mr. Evans contends that trial counsel deprived him of his right to testify. Trial counsel acknowledged that Evans wanted to testify and that they had argued about it during their only meeting at the ACI. Counsel also made it clear that he believed it would be "suicidal" for Evans to take the stand, particularly in light of his previous convictions.[5] We agree with the hearing justice who characterized the admonition as "a very sound bit of advice." Regardless, the decision not to present Evans as a witness was unquestionably a tactical one. Moreover, Evans has failed to demonstrate that he attempted to assert "his right to testify" other than during the argument he had with trial counsel several weeks before trial. As Evans acknowledged at the postconviction relief hearing, "the argument was never resolved." Yet, in spite of what he knew to be trial counsel's unequivocal advice that testifying would be foolhardy, Evans never again informed counsel of his desire to testify.

## Conclusion

For the reasons stated in this Opinion, we affirm the judgment of the Superior Court. The papers in the case are remanded to the Superior Court.

Justice GOLDBERG did not participate.

---

5. At the postconviction relief hearing, Mr. Evans testified, "I have two drugstore robberies. That's for robberies. I have gun charges, drug charges, things of that nature, break-ins. No other robbery charges."