### STATE

v.

### Angelo MARMOLEJOS.

No. 2008–103–C.A.

Supreme Court of Rhode Island.

March 24, 2010.

---

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

Paula Rosin, Office of the Public Defender, for Defendant.

Present: SUTTELL, C.J.,
GOLDBERG, FLAHERTY, and
ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on January 27, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The defendant, Angelo Marmolejos (defendant), appeals from a Superior Court conviction of assault with a dangerous weapon and using a firearm while committing a violent crime. Because we are satisfied that cause has not been shown, we shall decide the appeal at this time. We affirm the convictions.

At trial, defendant and the complainant offered very different accounts of the events that gave rise to this conviction. According to Jose Lespin (complainant or Lespin), a motor-vehicle repair transaction between defendant and himself was the genesis of this dispute. The complainant testified at trial that defendant had retained him to repair his automobile, with the expectation of payment. Although Lespin granted defendant some time in which to pay, he testified that defendant failed to do so and that he requested of defendant repeatedly that he settle the debt. On December 5, 2006, defendant called Lespin and asked him to come to defendant's home so that he could pay him. According to Lespin, when he arrived at approximately 10 p.m., he asked to use the bathroom; as he was leaving it, he saw defendant standing near him, holding a pillow. Almost immediately, he felt "something electrical." Realizing that he had been shot, Lespin sought to disarm defendant, and a struggle ensued. Although Lespin managed to point the gun away from himself, he testified that defen-dant fired another shot. Lespin managed to escape; he ran upstairs and asked the occupant of another apartment—later identified as Lola Sanchez—to call the police.

Ms. Sanchez appeared at trial and testified that she heard the gunshot, followed by someone running up the stairs. She did not answer her door however, but called 911. The police arrived shortly thereafter and Lespin told the officers that he had been shot. He testified that although he remembered being placed in an ambulance, he lost consciousness shortly thereafter and remained so for seventeen days.

At trial, Lespin testified that he remembered an officer visiting him in the hospital and recalled identifying a photograph of defendant from a photo array. When the prosecution sought to introduce that photograph at trial, defendant objected, arguing that if the jury were informed that the police were in possession of his photograph, it could conclude that he had prior, unsavory contacts with law enforcement. The trial justice admitted the photograph, but cautioned the jury against drawing any adverse inferences, noting that the police collect these types of photographs from many sources, including state driver's licenses.

The defendant testified and recounted a different series of events. He stated that he and Lespin had known each other since they were children in the Dominican Republic. The defendant denied that Lespin had done any work on his vehicle; instead, he insisted that he had loaned Lespin $2,000 and was waiting for him to return it. Because he needed to pay rent, defendant asked Lespin to visit him to repay part of the money. The defendant testified that after Lespin arrived at his home, the two of them watched television until

Lespin left to test-drive a car that defendant's neighbor was selling. According to defendant, when Lespin returned from the test-drive, he was accompanied by an individual who was selling a gun. Although he stated he had no use for a gun, defendant began handling it while Lespin excused himself to use the bathroom.

The defendant testified that he did not know the gun was loaded; but he grabbed a pillow, placed it over the weapon, and aimed the weapon at Lespin as he left the bathroom. Although defendant testified that he was "fool[ing] around," Lespin fell back and began screaming. The defendant said that he fled the scene and the state because he was scared and he .could not afford a lawyer. He was apprehended in New York.

The jury rejected defendant's testimony and found him guilty of assault with intent to commit murder in a dwelling house, while armed with a dangerous weapon, in violation of G.L.1956 § 11–5–4 and using a firearm while committing a crime of violence, in violation of G.L.1956 § 11–47–3.2(a). This timely appeal followed.

Before this Court, defendant contends that the photo array introduced at trial was not relevant to the issues in this case; and that its probative value was substantially outweighed by its prejudicial effect, in violation of Rule 403 of the Rhode Island Rules of Evidence. The defendant also argues that with respect to Rule 16 of the Superior Court Rules of Criminal Procedure, the trial justice erred in two respects. Specifically, the first alleged error occurred when Lespin testified that there were two shots fired, rather than one, as defendant had testified before the jury. Finally, defendant alleges a second instance of unfair surprise arose from Lespin's testimony that he was hallucinating when the police interviewed him at the hospital.

## Standard of Review

■ It is well settled that we review a trial justice's decision admitting or excluding evidence under an abuse of discretion standard. *See State v. Reyes,* 984 A.2d 606, 614–15 (R.I.2009); *State v. Evans,* 742 A.2d 715, 719 (R.I.1999) ("[d]ecisions about the admission or exclusion of evidence based on relevance are left within the trial justice's discretion"). We will uphold a trial justice's decision unless "the admission of irrelevant evidence was prejudicial to a defendant's rights." *Evans,* 742 A.2d at 719.

■ Additionally, this Court affords great deference to a trial justice's determination of whether a violation of Rule 16 has occurred. *State v. Diefenderfer,* 970 A.2d 12, 23 (R.I.2009). We have declared that this standard of review is "extremely narrow: we will overturn a trial justice's ruling only if he or she has committed clear error." *State v. Espinal,* 943 A.2d 1052, 1062 (R.I.2008).

## Analysis

■ After careful review of the record in this case, we are satisfied that there is no merit to defendant's contention that the introduction of the photo array was an abuse of discretion. The defendant directs our attention to Rule 403, which provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

■ In this case, the trial justice cautioned the jury that the police have many sources for compiling photographs and that the jurors should not draw an adverse

inference simply because the police had a photograph of defendant. We agree with the cautionary instruction and are satisfied that the trial justice properly allowed the photograph into evidence. The fact that defendant's identity was not at issue in this case does not persuade us otherwise. As we have held, the state bears the burden of proving every element of a crime beyond a reasonable doubt, even if an element is not in dispute. *See State v. Spratt,* 742 A.2d 1194, 1198 (R.I.1999).

The defendant in *Spratt,* 742 A.2d at 1198, challenged the introduction of a photograph of the murder victim on relevancy grounds. This Court held that the question of relevance of documentary evidence is left to the sound discretion of the trial justice; and, because the state bears the burden of proving each element of the charge beyond a reasonable doubt, it has the right to present evidence establishing those elements in its case in chief. *Id.* Accordingly, we discern no abuse of discretion in the record before us, and we affirm the introduction of the photograph in this case.

■ The next issue that defendant raises is the alleged violations of Rule 16. We accord great deference to the trial justice's decision regarding whether a violation of Rule 16 occurred. *See Diefenderfer,* 970 A.2d at 23. Absent a showing of clear error, we will not disturb a trial justice's decision with respect to Rule 16. *Diefenderfer,* 970 A.2d at 23.

According to defendant, defense counsel was surprised when Lespin testified that two shots were fired on the night in question because that fact was not disclosed in discovery. Additionally, defendant also alleges unfair surprise arising from Lespin's testimony that he was hallucinating during a hospital interview with police—another alleged fact that defendant claims was not disclosed in discovery. In the first instance, the trial justice, during a side bar conference, suggested to defense counsel that this testimony would provide "an awful lot of fodder for cross-examination." In the second instance, the trial justice cited *State v. Andrade,* 657 A.2d 538, 543 (R.I.1995) noting that the jury would be provided with a curative instruction regarding how police collect photographs from many sources. After reviewing the transcript and the record, we are satisfied that this evidence did not rise to the level of a discovery violation.

Although Lespin's testimony that he heard a second shot was not expected by the defendant, the record does not suggest deliberate failure to disclose by the state, nor does the admission of that evidence rise to the level of clear error on the part of the trial justice. With respect to Lespin's statement that he was hallucinating during the police interview, again, this was not expected testimony from the complainant. However, we are not convinced that this evidence amounted to a discovery violation because it was undisputed that while hospitalized for a gunshot wound, Lespin was unconscious for an extended period and his ability to recall the events in this case was tested sufficiently on cross-examination.

### Conclusion

Accordingly, we affirm the conviction. The record may be remanded to the Superior Court.