Alexis DOCTOR

v.

STATE of Rhode Island.

No. 2004–78–Appeal.

Supreme Court of Rhode Island.

Jan. 31, 2005.

Daniel C. Schrock, for Plaintiff.

Christopher R. Bush, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

PER CURIAM.

The applicant, Alexis Doctor, appeals from the Superior Court's denial of his application for postconviction relief. This case came before the Court for oral argument on December 1, 2004, pursuant to an order directing all parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After considering the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the case should be decided at this time. For the reasons stated below, we deny the appeal and affirm the judgment of the Superior Court.

### Facts and Travel

This case arises from a shooting that occurred on August 11, 1990, in front of Sonny and Dennis' nightclub, located on the corner of Eddy and Globe Streets in Providence. That night, a vehicle containing six passengers was stopped in traffic in front of the club, when three individuals carrying guns approached and proceeded to open fire on the car and its occupants. After the gunmen ceased shooting and ran back to the rear of the club, the driver of the bullet-riddled vehicle somehow managed to drive to nearby Rhode Island Hospital. Willie Davis, one of the passengers, was thereafter pronounced dead due to a fatal gunshot wound to the head. Another passenger was treated for a bullet wound in his shoulder.

Witnesses identified Alexis Doctor, his brother Jose Doctor, and an unnamed juvenile as the three gunmen.[1] The state subsequently charged Alexis Doctor and his brother Jose with murder, conspiracy with an unindicted juvenile to commit murder, and two counts of assault with intent to commit murder. In February 1992, a first jury trial ended in a mistrial after the state's witness, Rodney Perry, invoked his Fifth Amendment privilege in front of the jury. In March 1992, a second jury trial resulted in the conviction of both brothers. We later overturned those convictions, however, holding that the trial justice had improperly restricted the scope of defense counsel's cross-examination of a witness. *State v. Doctor*, 644 A.2d 1287, 1291 (R.I. 1994). In January 1995, a third trial commenced and a jury again returned guilty verdicts on all counts against both Alexis and Jose. Each was sentenced to life imprisonment on the murder charge. On the conspiracy charges, each received a ten-year suspended sentence, with ten years probation. On the assault charges, each received a suspended sentence of five years to serve with five years probation. We affirmed the convictions in *State v. Doctor*, 690 A.2d 321 (R.I.1997).

On April 23, 1997, Alexis filed an application for postconviction relief in Superior Court. He later filed an amended application for postconviction relief on April 17, 2000, and the Superior Court held a hearing on September 29, 2003. At that hearing, the applicant claimed that he was entitled to postconviction relief on two grounds. First, he maintained that his attorney's deficient performance during his trial amounted to a violation of his right to counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. Second, applicant alleged that he had acquired new evidence that had been undiscoverable at the time of his original trial and that warranted a

---

1. The juvenile defendant later was identified as Douglas "Junior" Lewis, now deceased. *See In re Douglas L.*, 625 A.2d 1357 (R.I. 1993); *see also State v. Perry*, 779 A.2d 622 (R.I.2001).

new trial. The hearing justice was not persuaded by his arguments, however, and denied Doctor's application for postconviction relief, entering judgment on March 18, 2004. The applicant filed a timely appeal to this Court.

### Ineffective Assistance of Counsel

■ Under G.L. 1956 chapter 9.1 of title 10, "[p]ost[ ]conviction relief is available to any person in this state * * * who, after having been convicted of a crime, claims, 'inter alia, that the conviction violated [his or her] constitutional rights or that newly discovered facts require vacation of the conviction in the interest of justice.'" Powers v. State, 734 A.2d 508, 513–14 (R.I.1999) (quoting Mastracchio v. Moran, 698 A.2d 706, 710 (R.I.1997)). Determination of whether constitutional rights have been violated must be reviewed de novo. See Ornelas v. United States, 517 U.S. 690, 696–97, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); Broccoli v. Moran, 698 A.2d 720, 725 (R.I.1997); Mastracchio, 698 A.2d at 710. "Despite this de novo standard regarding ultimate determinations, however, the Supreme

Court has warned 'that a reviewing court should take care * * * to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts * * *.'" Powers, 734 A.2d at 514 (quoting Ornelas, 517 U.S. at 699, 116 S.Ct. 1657). See also Broccoli, 698 A.2d at 725; Mastracchio, 698 A.2d at 710; La Chappelle v. State, 686 A.2d 924, 926 (R.I.1996). Therefore, while we review de novo the hearing justice's determination that Doctor's constitutional rights were not violated, we will at the same time give great deference to the hearing justice's factual findings and inferences. See Powers, 734 A.2d at 514.

Doctor advances two theories to support his claim that his legal representation was deficient to such a degree that his constitutional right to counsel was violated. First he contends that his counsel, a highly respected veteran in the Public Defender's Office, failed to discuss a proposed Fenner instruction [2] with him and failed to object to the instruction when it was given.[3] He specifically alleges that his "counsel did not discuss with him and failed to object to

---

**2.** In State v. Fenner, 503 A.2d 518, 522 (R.I. 1986), we held that:

"it should be the obligation of a trial justice to inform counsel in advance if he or she intends to advise prospective jurors or jurors who have been selected to serve on a particular case that the defendant is in custody for the purpose of neutralizing any inference that might otherwise be formed. In the event that counsel objects to such an admonition, he or she has an obligation to inform the trial justice forthwith before the admonitions have been given. In such a situation, the trial justice should forego making such a statement to the jurors, but the defendant assumes the risk that by some inadvertence he or she may be seen in the course of being transported from the ACI to the courthouse or otherwise be seen to be in custody in circumstances of which the court might not be aware and in circumstances where this observation might not be

called to the attention of either the court or counsel."

**3.** The trial justice instructed the jury in the January 1995 trial as follows:

"Furthermore, you will note the fact there are marshals in the courtroom. I simply would advise you that the defendants are in custody for lack of bail. That is not at all germane, nor is it important to the jury's task in considering guilt or innocence in this case. In no way does their detention for lack of bail diminish the presumption of innocence which surrounds each of them. The mere fact that they have been detained for lack of bail must not prejudice you against them at all, nor should their detention generate any sympathy for them, either. The fact of the matter is you should disregard that detention, to the extent you regard it at all, as simply a neutral fact and give it no weight whatsoever."

the trial justice instructing the jury at the beginning of the trial that he was in custody for lack of bail." Second, Doctor says that "it was ineffective assistance of counsel for trial counsel not to pursue questioning requested by Appellant about a material discrepancy in evidence at the trial of the juvenile respondent in Family Court and the trial of his case * * *."

■ In reviewing a claim for ineffective assistance of counsel, we have adopted the standards set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Armenakes v. State*, 821 A.2d 239, 245 (R.I.2003); *Brennan v. Vose*, 764 A.2d 168, 171 (R.I.2001); *La Chappelle*, 686 A.2d at 926; *Brown v. Moran*, 534 A.2d 180, 182 (R.I.1987). Under *Strickland*, a two-part test must be satisfied: (1) the court "must be persuaded that counsel's performance was deficient[,]" and (2) "that the deficient performance prejudiced that defendant to such a degree that he was deprived of effective assistance of counsel." *State v. Figueroa*, 639 A.2d 495, 500 (R.I.1994) (citing *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052). Under the first part "[i]n reviewing a claim for ineffective assistance of counsel, [this Court has] stated that the benchmark issue is whether 'counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Toole v. State*, 748 A.2d 806, 809 (R.I.2000) (quoting *Tarvis v. Moran*, 551 A.2d 699, 700 (R.I.1988)). *See also Carpenter v. State*, 796 A.2d 1071, 1073–74 (R.I.2002). Furthermore, "[a] strong presumption in favor of competent represen-

tation exists." *Figueroa*, 639 A.2d at 500 (citing *Strickland*, 466 U.S. at 689–90, 104 S.Ct. 2052). Under the second part of the test, "[p]rejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

■ At the outset it is important to note that while it is not certain whether the trial justice conferred with counsel concerning the *Fenner* instruction, or whether counsel conferred with Doctor about the instruction, the weight of the credible evidence presented suggests that both occurred. Counsel for both Alexis and Jose Doctor testified at the hearing.[4] Neither could remember this particular case with specificity, but they both testified that it was their normal practice to confer with their clients concerning *Fenner* instructions, and that they would have objected to the instruction if asked to do so by their respective clients. The hearing justice, who also was the trial justice, also stated that it was his normal practice to consult with counsel before delivering a *Fenner* instruction to the jury and noted that he could "not remember ever gratuitously offering such an instruction without notifying counsel that [he] intended to do so." The only evidence to the contrary was Doctor's own assertions that neither the trial justice nor his own counsel conferred with him about the *Fenner* instruction.[5]

Furthermore, even if counsel neglected to confer with Doctor regarding the *Fenner* instruction, we agree with the hearing

---

4. At the January 1995 trial, attorney James Ruggerio represented Jose Doctor. He was called as a witness by Alexis Doctor at the postconviction-relief hearing.

5. The hearing justice noted that Doctor's contentions on this point were not credible. We

previously have held that in reviewing an application for postconviction relief, we defer to the trial justice's findings on credibility unless clearly wrong. *Usenia v. Vose*, 685 A.2d 1066, 1067 (R.I.1996) (citing *Fontaine v. State*, 602 A.2d 521, 525–26 (R.I.1992)).

justice's determination that Doctor was not prejudiced by the *Fenner* instruction that was given to the jury at the January 1995 trial. The courtroom was small and crowded and several marshals were present in the room, some in very close proximity to defendants. It is highly likely that the jury knew that the two defendants were in custody, and it should have been no surprise to the jurors when the trial justice so informed them. In our opinion, counsel's objection to the instruction being given would not have changed the outcome in this case.

■ Doctor next urges that his counsel was ineffective because he did not pursue a line of questioning regarding a discrepancy between the testimony at the juvenile Lewis' Family Court proceeding and the testimony at Doctor's trial. In the Family Court proceeding, testimony was proffered that only four individuals were in the car during the shooting. *See In re Douglas L.*, 625 A.2d at 1357, 1358 (R.I.1993). At Doctor's trial, however, the testimony revealed that six people were in the car. *See Doctor*, 690 A.2d at 323. Doctor offers no argument why a line of questioning on this point would change the verdict at a new trial. In fact, the juvenile Lewis, Doctor's accomplice, was convicted of assault with intent to murder after a trial in the Family Court with the testimony that there were only four passengers in the car. *See In re Douglas L.*, 625 A.2d at 1358. In our opinion, any questioning advanced by counsel concerning the number of people in the car would make no difference in the outcome of a new trial.

Moreover, Doctor has failed to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Brown*, 534 A.2d at 182 (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Defense counsel's decision not to raise a line of questioning concerning the number of people in the car clearly "fell within that acceptable range of latitude afforded defense counsel to determine trial strategy and therefore was not unreasonable." *Id.* at 183. *See also Toole*, 748 A.2d at 809–10 (failure to call certain witnesses and to object at certain points during a trial was not constitutionally unreasonable); *Hughes v. State*, 656 A.2d 971, 972–73 (R.I. 1995) (failure to argue against admissibility of evidence and challenge jury instructions was not unreasonable); *Brown*, 534 A.2d at 183 (failure to admit certain evidence was not unreasonable); *State v. D'Alo*, 477 A.2d 89, 91–93 (R.I.1984) (failure to object to certain testimony, counsel making improper statements to the trial justice resulting in mild admonishment in front of jury, and failure to brief certain issues on appeal was not ineffective assistance of counsel).

After reviewing the record, we reject Doctor's argument that he was deprived of his constitutional right to counsel.

### Newly Discovered Evidence

■ When reviewing claims pertaining to newly discovered evidence in an application for postconviction relief, we apply the same standard of review as when reviewing the denial of a new trial. *Powers*, 734 A.2d at 517; *Mastracchio*, 698 A.2d at 713. "[T]his Court will not disturb the decision unless the trial justice has overlooked or misconceived material evidence or was otherwise clearly wrong." *State v. Luanglath*, 749 A.2d 1, 4 (R.I. 2000). Accordingly, the trial justice's ruling on a motion for new trial is given great weight. *State v. Dame*, 560 A.2d 330, 332–33 (R.I.1989) (citing *State v. Henshaw*, 557 A.2d 1204, 1207 (R.I.1989)). When specifically addressing a motion for new trial based on new evidence, this standard involves the application of a two-part test:

"[First], the trial justice must determine (1) if the newly discovered evidence actually is newly discovered or available only since the trial, (2) if the petitioner was diligent in attempting to discover the evidence for use at the original trial, (3) that the evidence is not merely cumulative or impeaching but is also material to the issue, and (4) that the evidence is of a kind that would probably change the verdict at a new trial." *Mastracchio,* 698 A.2d at 713 (quoting *McMaugh v. State,* 612 A.2d 725, 731 (R.I.1992)).

Second, if satisfied that the evidence meets the foregoing threshold requirements, the trial justice then must "decide whether the evidence is credible enough to warrant a new trial." *State v. Evans,* 725 A.2d 283, 289 (R.I.1999) (quoting *State v. Vendetti,* 655 A.2d 686, 687 (R.I.1995)).

Doctor claims to have new evidence in the recanted testimony of Rodney Perry, a witness at the first trial in February 1992, which ended in a mistrial. At that time, Perry asserted his Fifth Amendment right against self-incrimination. Because he did so in front of the jury, the trial justice declared a mistrial. *See Doctor,* 690 A.2d at 323. Perry previously had identified Doctor as one of the gunmen on no less then four occasions.[6] Doctor now asserts that Perry, who is serving a life sentence plus eight years at the Adult Correctional Institutions for the murder of Doctor's juvenile accomplice in the killing of Davis, will testify that he was unable to identify the shooters.

We agree with the hearing justice's determination that Perry's proposed testimony failed to meet the test for new evidence. In so finding, the hearing justice emphasized that Perry was called as a witness neither in the second trial, nor the third trial of January 1995, despite his availability to testify. Concluding that the only evidence that Perry could offer was that he did not see the shooting, and that Perry would be impeached by his four previous statements, the hearing justice concluded that Perry's evidence was not newly discovered, and that it would not have changed the verdict.

In our opinion, Doctor's claimed entitlement to a new trial does not satisfy either part of the test set forth in *Powers* and *Mastracchio.* Although Perry was available to testify at the January 1995 trial, he was not called to do so. Additionally, Perry's testimony that he could not see the gunmen is both cumulative and impeaching. The only purpose for which Perry's testimonial evidence would be introduced is to contradict the testimony of the witnesses who did testify at the January 1995 trial that they could see the gunmen. Perry's recanted testimony also would be impeached by his prior statements.

Furthermore, there is no evidence that the hearing justice committed reversible error in determining that Perry's testimony was not credible. We have held that "when a person comes forward with an eleventh-hour confession that exculpates that defendant long after he or she has had several opportunities to do so * * *, such circumstances demonstrate the unreliability of the testimonial evidence." *Brennan,* 764 A.2d at 174 (citing *State v. Firth,* 708 A.2d 526, 531 (R.I.1998)). In this case, Perry waited thirteen years before coming forward to offer this testimony. Moreover, Perry had numerous opportunities to testify in this case, and came forward only after being convicted and

---

**6.** Perry identified Doctor as one of the assailants in a statement to the police after the shooting, at a bail hearing, at a waiver hearing in the Family Court, and before a grand jury.

sentenced to life imprisonment. On these facts, we cannot hold that the hearing justice overlooked or misconceived material evidence or was otherwise clearly wrong in finding that Perry's testimony lacked credibility.

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

Justice SUTTELL did not participate.