McCarthy **LARNGAR**

v.

**Ashbel T. WALL, Director of Rhode Island Department of Corrections.**

**No. 2004–96–Appeal.**

Supreme Court of Rhode Island.

April 5, 2007.

Stephanie DiMaio–Larivee, Esq., for Plaintiff.

Jane M. McSoley, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice ROBINSON for the Court.

The applicant, McCarthy Larngar, appeals to this Court from a denial of his application for postconviction relief. On appeal, Mr. Larngar contends that his application for postconviction relief on the basis of ineffective assistance of counsel should have been granted, and he points to several alleged errors and/or omissions for which he blames his trial counsel. He argues that those errors and/or omissions constituted ineffective assistance of counsel. Specifically, Mr. Larngar contends that his trial counsel was ineffective because she (1) failed to request a jury instruction concerning self-defense or accident;[1] (2) failed to conduct a proper pretrial investigation or, in the alternative, failed to make a determination that such an investigation was not necessary; and (3) substantially interfered with Mr. Larngar's right to testify on his own behalf and thereby violated his constitutional rights.

In addition, Mr. Larngar contends that the hearing justice who presided over the postconviction-relief hearing[2] erred in excluding testimony that he says would have shown that his trial counsel used illegal drugs during her representation of him—an allegation that Mr. Larngar contends would have bolstered his claim of ineffective assistance of counsel.

For the reasons set forth herein, we affirm the Superior Court's denial of Mr. Larngar's application for postconviction relief.

## Facts and Travel

The following facts have been gleaned from the record of the hearing on Mr. Larngar's application for postconviction relief.[3]

---

1. In addition, Mr. Larngar contends that the trial justice erred by not giving a jury instruction on self-defense or accident *sua sponte* since, in Mr. Larngar's view, the evidence warranted such an instruction. *See* n. 9, *infra*.

2. The same justice of the Superior Court who presided over Mr. Larngar's trial also presided over the hearing on the application for postconviction relief, which was held several years later.

3. Some further facts will be set forth in our discussion and analysis of Mr. Larngar's legal arguments.

On or about May 5, 1996, McCarthy Larngar went to a nightclub in Providence with four of his friends. While he was at the nightclub, a fight broke out. According to Mr. Larngar, who did not take the stand at his trial but who did testify at the hearing on his application for postconviction relief, the fight was between his cousin Thelleh Duopu and another person. Mr. Larngar attempted to break up the fight, dodging a chair that was thrown at him. Mr. Larngar testified that, when he was leaving the club with his friends they heard gunshots fired, but they were proceeding to their car at that point and they left the scene.

According to Alfreda Moore, who also testified at the postconviction-relief hearing on Mr. Larngar's behalf, the fight at the nightclub involved at least fifteen people, including Ashford Peal, his brother Sam Peal, and a man whom she referred to as "Gador." Ms. Moore testified that Mr. Larngar may also have been involved in the fight, but she said that she believed that his involvement in the fight was limited to trying to pull one of his friends out of the way when a chair was being thrown at Mr. Larngar. Ms. Moore testified that she stayed at the club until the fight ended and the club had been vacated. By the time Ms. Moore left the nightclub, the police had arrived. Ms. Moore testified that she did not ask the police for information about what had transpired outside of the club; she also testified that she did not provide the police with information about the fight which she had witnessed because she did not want to get involved.

Ms. Moore further testified at the postconviction-relief hearing that, after leaving the nightclub, she and a friend of hers proceeded to a dance that was being held at the John Hope Settlement Center in Providence. Ms. Moore stated that, while she was at the dance, Ashford Peal, his brother Sam, and Gador approached her and asked her whether she had seen Mr. Larngar. Ms. Moore testified that, when she responded that she had not seen Mr. Larngar, Ashford Peal told her to "tell him I'm looking for him." According to Ms. Moore, at that point Ashford Peal directed her attention to a gun that he had tucked into the waistband of his pants. She further testified that Gador was wearing brass knuckles and that Sam Peal was carrying some knives in his coat. Ms. Moore stated that Gador told her that they were "going to get him." Ms. Moore testified that she did not call the police after this incident because, once again, she did not want to get involved.

Clarence Youn, an acquaintance of both Mr. Larngar and Ashford Peal, also testified on Mr. Larngar's behalf at the postconviction-relief hearing. Mr. Youn had also witnessed the fight at the nightclub on the night in question. He testified that, although he did not see Mr. Larngar at the club that evening, he did see Ashford Peal there and that Ashford Peal was involved in the fight. According to Mr. Youn, when the fight spilled over from inside the club to outside, he heard about five gunshots. Mr. Youn testified on cross-examination that he never saw Ashford Peal with a weapon that night.

After Mr. Larngar left the nightclub, he and his four friends proceeded to drive to a house party at 503 Elmwood Avenue, stopping along the way at a gas station to purchase ice and chips to bring to the party. Upon arriving at the apartment house on Elmwood Avenue, Mr. Larngar exited the car along with Rodney Stevens, Janelle Castle, and Deniel Johnson. As the four friends walked into the house, Mr. Stevens told them that he was going to stop on the first floor in order to speak with his mother, who resided there. Mr.

Stevens told his friends to go upstairs to the party.

Mr. Larngar, Ms. Castle, and Ms. Johnson proceeded to walk up the stairs, and, when they reached the second-floor landing, they encountered Ashford Peal and two other men leaving the party. According to Mr. Larngar, the men asked for his cousin; when Mr. Larngar responded that he did not know what they were talking about, Ashford Peal called him a "punk," and a fistfight ensued.

Mr. Larngar testified at the postconviction-relief hearing that, during the fistfight, he heard one of the men say: "Get that. Get that handle." He further testified that he then saw Ashford Peal "reaching" and that he heard Ms. Castle yell, "[W]atch out McCarthy, he got something." According to Mr. Larngar, Ashford Peal then lifted a shiny object (which he later determined was a gun), at which point Mr. Larngar grabbed his hand because he believed that Ashford Peal was trying to shoot him. Mr. Larngar further testified at the hearing that, while he was focusing on grabbing Ashford Peal's hand, one of the other men tried to hit him. It was further Mr. Larngar's testimony that, at some point during the struggle, all three men—Ashford Peal, Mr. Larngar, and the man who was trying to hit him—had their hands on the weapon, and it discharged. Mr. Larngar testified that he never had full possession of the gun at any point, and he denied pulling the trigger.

After the first gunshot, which wounded Ashford Peal, Mr. Larngar felt less of a struggle from Ashford Peal, who backed up and turned away. He testified that he heard one of the men with Mr. Peal ask: "Did you get him? Did you get him?" According to Mr. Larngar, he continued to struggle with the other man until he heard two more gunshots and some "clicks." At that point, Mr. Larngar pushed past the man with whom he had been struggling and ran while telling his two friends, Ms. Castle and Ms. Johnson, to run also.

A second shooting victim, Delano Outland, had testified at the trial that a bullet had passed through his shirt when Mr. Larngar shot at Ashford Peal. It was Mr. Outland's trial testimony that he had stepped in between Mr. Larngar and Ashford Peal. Although Mr. Larngar recalled hearing Mr. Outland's trial testimony and seeing the shirt with a bullet hole in it, Mr. Larngar testified at the postconviction-relief hearing that he never saw Mr. Outland on the evening in question. In fact, Mr. Larngar testified that he had never seen Mr. Outland at any time.

Mr. Larngar was charged by indictment on June 27, 1997 with one count of assault with intent to murder in a dwelling house while armed with a dangerous weapon and one count of carrying a pistol without a license.

A trial commenced on September 30, 1997, at the conclusion of which the jury returned a verdict finding Mr. Larngar guilty of the lesser included offense of assault with a dangerous weapon and of the offense of carrying a pistol without a license.

Mr. Larngar filed a motion for a new trial, which was heard and denied on November 14, 1997. The trial justice sentenced Mr. Larngar to a term of twenty years of imprisonment, with twelve years to serve, for the assault with a dangerous weapon, and to a concurrent term of ten years of imprisonment, with five years to serve, for the offense of carrying a pistol without a license. A notice of appeal was filed, but the appeal was never perfected.

On May 3, 2002, Mr. Larngar filed an application for postconviction relief pursuant to G.L.1956 § 10–9.1–1, in which he alleged ineffective assistance of counsel.

After a hearing that took place over the course of several days between December 2 and December 9, 2002, the hearing justice rendered a decision denying the application for postconviction relief, and it is from that denial that Mr. Larngar now appeals.[4]

## Standard of Review

■ Section 10–9.1–1 provides that postconviction relief is a remedy available to any person who has been convicted of a crime in this state and who thereafter alleges either that the conviction violated his or her constitutional rights or that the existence of newly discovered material facts requires the vacation of the conviction in the interest of justice. The applicant has the burden of proving, by a preponderance of the evidence, that postconviction relief is warranted in his or her case. *See Estrada v. Walker*, 743 A.2d 1026, 1029 (R.I.1999); *Jacques v. State*, 669 A.2d 1124, 1129 (R.I.1995); *Palmigiano v. Mullen*, 119 R.I. 363, 374, 377 A.2d 242, 248 (1977).

In *State v. Thomas*, 794 A.2d 990 (R.I. 2002), we summarized as follows the criteria that guide our review of a trial justice's decision with respect to an application for postconviction relief:

"We will not disturb a trial justice's findings on an application for post-conviction relief absent clear error or a showing that the trial justice overlooked or misconceived material evidence. * * * However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and

mixed questions of law and fact with constitutional implications, are reviewed *de novo.* * * * Finally, [f]indings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a *de novo* standard is applied to the issues of constitutional dimension." *Id.* at 993 (internal quotation marks omitted).[5]

We continue to adhere to those criteria, and we shall be guided by them in the analysis which follows.

## Analysis

### I

### Alleged Ineffective Assistance of Counsel

Mr. Larngar contends that his application for postconviction relief should have been granted because his right to the effective assistance of counsel, a right which is guaranteed both by the Sixth Amendment to the United States Constitution and by article 1, section 10, of the Rhode Island Constitution, was violated; Mr. Larngar further argues that he was prejudiced by that alleged violation. In support of his contention, Mr. Larngar points to several errors and/or omissions that he asserts were committed by his privately retained trial counsel during the course of the trial.

■ The burden of proving ineffective assistance of counsel is on the party making that claim. *State v. Brennan*, 627 A.2d 842, 845 (R.I.1993). When this Court re-

---

4. Ordinarily, the entry of final judgment is a prerequisite to this Court's review of the denial of an application for postconviction relief. *See Carpenter v. State*, 796 A.2d 1071, 1072 (R.I.2002). Although the record in the instant case does not contain a separate final judgment with respect to the postconviction-relief application, the record does contain an order

declaring that Mr. Larngar's application was denied. We shall deem that order to be a final judgment for purposes of appeal.

5. *See also Doctor v. State*, 865 A.2d 1064, 1067 (R.I.2005); *Ouimette v. State*, 785 A.2d 1132, 1135 (R.I.2001).

views a defendant's claim of ineffective assistance of counsel, we utilize the standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Doctor v. State,* 865 A.2d 1064, 1068 (R.I.2005); *Heath v. Vose,* 747 A.2d 475, 478 (R.I.2000); *Brennan,* 627 A.2d at 844; *Brown v. Moran,* 534 A.2d 180, 182 (R.I.1987). We have indicated that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Heath,* 747 A.2d at 478 (quoting *Strickland,* 466 U.S. at 686, 104 S.Ct. 2052); *see also Toole v. State,* 748 A.2d 806, 809 (R.I.2000); *Tarvis v. Moran,* 551 A.2d 699, 700 (R.I.1988).

In *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052, the Supreme Court stated that a defendant must satisfy a two-part test in order to succeed on a claim of ineffective assistance of counsel:

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense."

■ When making the determination as to whether counsel's performance was deficient, we bear in mind the principle that there is a strong evidentiary presumption that counsel's conduct was competent. *State v. Figueroa,* 639 A.2d 495, 500 (R.I. 1994); *see also Strickland,* 466 U.S. at 689–90, 104 S.Ct. 2052; *Doctor,* 865 A.2d at 1068. With respect to the second part

of the *Strickland* test, we have stated that "[p]rejudice exists if there is a reasonable probability that, absent counsel's deficient performance, the result of the proceeding would have been different." *Figueroa,* 639 A.2d at 500; *see also Doctor,* 865 A.2d at 1068.

This Court has also noted that "rarely, if ever, following conviction has any federal or state court permitted a defendant who has been represented by private counsel to later question, in post-conviction proceedings, the ineffectiveness or inefficiency of the trial counsel that the defendant chose and selected to represent him or her at trial." *State v. Dunn,* 726 A.2d 1142, 1146 n. 4 (R.I.1999); *see also Hassett v. State,* 899 A.2d 430, 434 n. 3 (R.I.2006) ("[W]hen a person selects his or her own attorney, any alleged deficiencies seldom amount to an infringement of one's constitutional rights.") [6] We have also indicated that the trial performance of a privately retained defense attorney cannot be said to have infringed a defendant's constitutional rights "unless the attorney's representation [was] so lacking that the trial [had] become a farce and a mockery of justice * * *." *Heath,* 747 A.2d at 477 n. 1 (internal quotation marks omitted).

### A

### Jury Instructions

■ The first alleged error that Mr. Larngar attributes to his trial counsel in support of his argument that his motion for postconviction relief should have been granted is the fact that she did not request a jury instruction concerning the defense of self-defense. Mr. Larngar contends that a jury instruction on the issue of self-defense was required as a matter of law

**6.** Mr. Larngar was represented at trial (and at the postconviction-relief hearing) by privately

retained counsel.

and that the failure of his trial counsel to request such an instruction violated his due process rights and constituted ineffective assistance of counsel.

■ As the state quite correctly acknowledges in its brief to this Court, where there is evidence in the record "in support of any defense offered by an accused, which raises an issue of fact favorable" to the accused, he or she is entitled to an affirmative instruction which fully and fairly states the law applicable thereto; that principle applies regardless of how "slight and tenuous the evidence may be * * *." *State v. DiChristofaro*, 848 A.2d 1127, 1129–30 (R.I.2004) (internal quotation marks omitted); *see also State v. D'Amario*, 568 A.2d 1383, 1385 (R.I.1990); *State v. Butler*, 107 R.I. 489, 496, 268 A.2d 433, 436–37 (1970).

At the same time, however, it is important to bear in mind that a defendant does not have *carte blanche* to claim entitlement to a particular instruction regardless of the state of the evidence. For example, in *DiChristofaro*, 848 A.2d at 1130, we stated that "[a] self-defense instruction is not warranted * * * when there is no evidence on which a jury could find that the defendant acted in self-defense because such an instruction could mislead or confuse the jury * * *." *See also State v. Dumas*, 835 A.2d 438, 441 (R.I.2003) ("[T]he court should not instruct the jury as requested by a party when the evidence does not support such instructions * * *."); *State v. Dellatore*, 761 A.2d 226, 231 (R.I.2000); *State v. Martinez*, 652 A.2d 958, 961 (R.I. 1995); *D'Amario*, 568 A.2d at 1385.

In rendering his decision on Mr. Larngar's application for postconviction relief, the hearing justice stated that, during the course of the trial, even after hearing the trial testimony of Janelle Castle (the only witness who testified for the defense), "it never occurred to [him] that a self-defense instruction was appropriate." The hearing justice noted that such an instruction was never requested nor even discussed in the precharging conference, and he further stated that the reason such an instruction was not discussed was that "a close look at the record in this case would clearly indicate that [Ms. Castle's] testimony does not rise anywhere near * * * to the prospect of either an instruction on self-defense or accident."

The hearing justice continued to focus on the trial testimony of Ms. Castle, and he specifically alluded to the fact that she described Ashford Peal's action just before the assault as "reaching in his waist." The hearing justice added that "[a]t no time during her testimony [did] she say what, if anything, he pulled from his waist." The hearing justice found that there was "no credible evidence on the record * * * that the alleged victim * * * had a gun." He also noted that "[t]here was no evidence from Ms. Castle that Mr. Larngar did not have a gun." The hearing justice also noted that, during the hearing on his application for postconviction relief, Mr. Larngar denied ever being in possession of the gun—a denial which, we would note, is inconsistent with Mr. Larngar's position that he shot the victim in self-defense.

According the required degree of deference [7] to the hearing justice's findings of fact at the postconviction-relief hearing, we can perceive neither that he clearly erred nor that he overlooked or misconceived material evidence in reaching the conclusion that an instruction on self-defense was not warranted in the instant case. Consequently, the fact that defense counsel did not request such an instruction did not constitute ineffective assistance of counsel.

7. *See State v. Thomas*, 794 A.2d 990, 993

(R.I.2002).

Mr. Larngar also contends that the record at trial supported an instruction on the defense of accident and that the failure of his trial counsel to request such an instruction violated his right to due process and constituted ineffective assistance of counsel. In support of his contention that an accident instruction was warranted, Mr. Larngar points to the testimony of Ms. Castle, the only witness who took the stand on his behalf at trial. Ms. Castle testified at trial that there had been a struggle involving Mr. Larngar and the victim. According to Ms. Castle, Ashford Peal reached into the waistband of his pants for something and she told Mr. Larngar that Ashford "got something" but that she did not know what it was. Ms. Castle testified that Mr. Larngar and Ashford Peal began wrestling with each other, and a third man "jumped in," and then she heard two gunshots. It was Ms. Castle's testimony that Ashford Peal then walked away holding his stomach while Mr. Larngar and the third man continued fighting over the gun, which Ms. Castle stated she could see at that point. Ms. Castle stated that while Mr. Larngar and the man were trying to get the gun away from each other, she heard a third gunshot.[8]

After reviewing the record, it is our opinion that, although the record may have conceivably supported an instruction on the defense of accident had Mr. Larngar's trial counsel requested it, Mr. Larngar has not satisfied his burden of proving that the fact that counsel did not make such a request constituted ineffective assistance of counsel. It cannot be said that the evidence to which he points in support of this argument so clearly warranted an accident instruction that the fact that his privately retained trial counsel did not request such an instruction constituted a "farce and a mockery of justice." *See Heath*, 747 A.2d at 477 n. 1 (internal quotation marks omitted). Consequently, it is our opinion that the hearing justice correctly concluded that defense counsel's performance in this regard did not constitute ineffective assistance of counsel.[9]

## B

### Pretrial Investigation

Mr. Larngar next asserts that his trial counsel violated his right to effective assistance of counsel by failing to conduct a proper pretrial investigation or, in the alternative, by failing to make a determination that such an investigation was unnecessary. Mr. Larngar primarily faults his trial counsel for not locating and/or interviewing potential witnesses whose identities were allegedly made known to her.

8. In further support of his argument based upon the absence of an accident instruction, Mr. Larngar points to the testimony of his trial counsel at the postconviction-relief hearing, wherein trial counsel stated that her theory of defense in Mr. Larngar's case was "accidental shooting." Mr. Larngar's counsel further testified at the hearing that she could not recall why she did not request an accident instruction.

9. Mr. Larngar also contends that, despite trial counsel's failure to request a jury instruction on self-defense or accident, the trial justice should have given such an instruction *sua sponte* because, according to Mr. Larngar, the evidence supported such an instruction and the trial justice was aware that self-defense or accident was the defense theory at trial. Mr. Larngar argues that 'the trial justice violated his right to a fair trial and his right to due process by not giving either a self-defense or an accident instruction. Because we have held that the hearing justice did not overlook or misconceive material evidence in concluding that neither an instruction on self-defense nor an instruction on accident was warranted, we need not reach the issue of whether or not the trial justice would have been obliged to give an instruction *sua sponte*.

Mr. Larngar is correct that, as the Supreme Court indicated in *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052 attorneys have a duty to undertake "reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." However, the Supreme Court in *Strickland* also emphasized that the reasonableness of a particular decision by counsel not to investigate must be assessed in light of all of the circumstances of the case, and it further stated that a reviewing court should apply "a heavy measure of deference to counsel's judgments." *Id.*

█ In the instant case, Mr. Larngar contends that, in preparing for the trial, his trial counsel should have contacted Alfreda Moore, who did not testify at trial but who eventually testified on his behalf at the hearing on his application for post-conviction relief,[10] and whose identity, according to Mr. Larngar, was made known to trial counsel.

According to Ms. Moore's testimony at the hearing on Mr. Larngar's application for postconviction relief, she did not tell Clarence Youn [11] about her encounter with Ashford Peal, his brother Sam, and his friend Gador on the evening of the shooting until a couple of months after it had occurred. Ms. Moore testified that, when she eventually spoke to Mr. Youn, she told him about the encounter, and he asked her whether she would be willing to testify about it. Ms. Moore stated that, although she had been willing to testify, she did not attempt to contact Mr. Larngar or his parents, nor did she attempt to find out the name of his lawyer. According to Ms. Moore, Mr. Youn eventually told her that the lawyer with whom he had spoken told him that Ms. Moore's testimony would not be needed.

Mr. Youn testified at the postconviction-relief hearing that, after speaking with Ms. Moore, he contacted Mr. Larngar's parents in order to ascertain the name of Mr. Larngar's attorney, so that he could discuss the information that Ms. Moore had shared with him. According to Mr. Youn, he went with Rodney Stevens to the office of Mr. Larngar's then-attorney (who was not his eventual trial attorney)[12] and spoke with someone there about the information that he himself had and about the information Ms. Moore had shared with him. Mr. Youn testified that, although he gave his own contact information to the person with whom he met at the law office, he did not provide that person with Ms. Moore's name or contact information. Mr. Larngar's first attorney, who also testified at the postconviction-relief hearing, confirmed that he was never given the name of Alfreda Moore.

When Mr. Larngar's trial counsel testified at the hearing on the application for postconviction relief, she stated that she was never given the name of Alfreda Moore or the names of any witnesses who may have seen Ashford Peal with a weapon on the evening of the shooting.

---

10. It will be recalled that, at the hearing on Mr. Larngar's application for postconviction relief, Ms. Moore testified that, on the night of the shooting, she had encountered Ashford Peal, one of the eventual shooting victims, and that he had asked her if she had seen Mr. Larngar. According to Ms. Moore, when she responded in the negative, Mr. Peal told her that he was looking for Mr. Larngar and that he was "going to get him." Ms. Moore further testified that, at that point, Mr. Peal opened up his jacket and revealed weapons, including a gun.

11. The reader will recall that Clarence Youn was an acquaintance of both Mr. Larngar and Ashford Peal.

12. The first attorney who was retained by Mr. Larngar's family to defend him withdrew from the case prior to trial.

Significantly, in a handwritten statement[13] that Mr. Larngar gave to the first attorney who represented him, Mr. Larngar himself did not list Ms. Moore as a potential witness. In fact, his statement concludes with a section explicitly labeled "Witnesses," and only two names are written there. The names were those of Janelle Castle, who did in fact testify on his behalf at trial, and Deniel Lewis,[14] who Mr. Larngar concedes was out of the country at the time of trial.

In rendering his decision on Mr. Larngar's application for postconviction relief, the hearing justice found, "based on the credible evidence," that Ms. Moore's identity had not been made known to Mr. Larngar's trial counsel. After a careful review of the record, we can perceive no clear error with respect to the hearing justice's finding in this regard.

■■■ Mr. Larngar does not specifically identify other witnesses who he believes should have been called by his trial counsel; rather, he vaguely asserts that "[p]otential witnesses could have been located at the scene of the shooting and at the club where the fight happened * * *." Mr. Larngar does not indicate what the testimony of those unnamed witnesses might have been had they been called to the stand, nor does he indicate how that testimony might have affected the verdict in his case. Even if it were to be conceded *arguendo* that his trial counsel's performance was deficient because she did not

locate other "potential witnesses," it is our opinion that Mr. Larngar has not demonstrated a reasonable probability that, had these potential witnesses been located, the outcome of his trial would have been different. *See Figueroa,* 639 A.2d at 500; *see also Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *Doctor,* 865 A.2d at 1068.

■■■ Mr. Larngar also contends that his trial counsel was ineffective because she did not request discovery from the state and because she failed to provide discovery and a list of witnesses to the state prior to trial. Mr. Larngar contends that, as a result of these failures, his counsel's "feeble" attempt to call Rodney Stevens to testify at trial[15] was denied by the trial justice.

Our review of the record reveals that Mr. Larngar's trial counsel did request discovery in connection with the original information.[16] Mr. Larngar's trial counsel testified at the postconviction-relief hearing that one of the reasons she did not file separate discovery with respect to the indictment was that she believed that the state's responses to her initial discovery requests contained the material that she needed. She did not believe that she would have received anything more in response to a discovery request made after the indictment. Mr. Larngar's trial counsel further testified that her decision not to file additional discovery requests was a "tactical" one, which she made so as to

13. This handwritten statement was admitted into evidence at the postconviction-relief hearing.

14. Mr. Larngar testified at the postconviction-relief hearing that, although he referred on the list of witnesses in his statement to "Deniel Lewis," he later learned that that woman's name actually was Deniel Johnson. Elsewhere in this opinion we refer to Deniel Lewis as Deniel Johnson.

15. Defense counsel did seek to have Rodney Stevens testify at trial, but the prosecutor objected on the ground that Mr. Stevens's name had not been disclosed during discovery—an issue that will be discussed *infra.*

16. The record indicates that Mr. Larngar was originally charged by information prior to being indicted.

ensure that she would not have to engage in reciprocal discovery with the state.

Moreover, Mr. Larngar's trial counsel testified that, based upon her years of experience in trying cases, she determined that some of the witnesses were not credible and could have an adverse impact on Mr. Larngar's defense. She stated that she met with Mr. Larngar and with members of his family to discuss potential witnesses. She also stated that she decided to call Janelle Castle to testify at trial because Ms. Castle had been an eyewitness to the shooting.

Unlike Ms. Castle, Rodney Stevens was not an eyewitness to the shooting—a fact that Mr. Larngar conceded in his own testimony at the postconviction-relief hearing—and Mr. Larngar's trial counsel believed that his testimony would not add anything to the case. Nevertheless, at Mr. Larngar's insistence, his trial counsel did attempt to call Mr. Stevens at trial, and she made an offer of proof in which she stated that Mr. Stevens had been with Mr. Larngar at the nightclub earlier in the evening. The trial justice sustained the state's objection; he did so both because the state did not have prior notice of his testimony and because he believed that Mr. Stevens would offer "nothing * * * whatsoever to the material aspects of [the] case."

■ It is our view that trial counsel's decisions with respect to which witnesses to call to the stand on Mr. Larngar's behalf were indeed tactical. And we have expressly stated that "mere tactical deci-

sions, though ill-advised, do not by themselves constitute ineffective assistance of counsel." *Toole*, 748 A.2d at 809; *see also Young v. State*, 877 A.2d 625, 629 (R.I. 2005).[17]

■ Mr. Larngar further criticizes his trial counsel for the fact that she "did not know of the existence of tangible evidence in this case." Specifically, Mr. Larngar refers to some clothing that had been worn on the night of the shooting. His trial counsel testified at the postconviction-relief hearing that the reason she was unaware of that tangible evidence was that said evidence had not been disclosed to her or to Mr. Larngar's predecessor counsel prior to the trial. Rather, it appears that, during the trial, the state attempted to call to the witness stand a detective who was in possession of the tangible evidence to which Mr. Larngar refers. Mr. Larngar's counsel recalled objecting to the introduction of the previously undisclosed evidence, and her objection was sustained. The hearing justice noted in rendering his decision on Mr. Larngar's postconviction-relief application that trial counsel had "challenged and precluded the use of certain State's evidence in the ordinary course of her representation * * *."

We note that it was the prosecutor who sought to introduce the clothing in question. It is logical to assume that the prosecutor thought that that tangible evidence would strengthen the state's case. Accordingly, there is no basis for concluding that Mr. Larngar's trial counsel "was not

---

**17.** Even assuming *arguendo* that the attempt by Mr. Larngar's trial counsel to call Rodney Stevens to the stand could be characterized as a "feeble" one and that his trial counsel's performance in this regard was deficient, Mr. Larngar has failed to satisfy the second prong of the *Strickland* test—namely that he was prejudiced by the alleged deficiency. *See Strickland v. Washington*, 466 U.S. 668, 687,

104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In our judgment, we are not confronted with a reasonable probability that if Mr. Stevens, who was not an eyewitness to the shooting, had testified at trial, the outcome of the proceeding would have been different. *See State v. Figueroa*, 639 A.2d 495, 500 (R.I.1994); *see also Doctor*, 865 A.2d at 1068.

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" [18] in this situation where defense counsel *successfully* objected, thereby blocking admission of the clothing. We are satisfied, therefore, that defendant did not show that counsel's failure to inspect the clothing was deficient under even the first prong of the *Strickland* test. We, of course, avoid using hindsight in assessing the issue. *See Brown,* 534 A.2d at 182 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight * * *.") (quoting *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052); *see also State v. D'Alo,* 477 A.2d 89, 92 (R.I.1984) ("[A] choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard.") (quoting *United States v. Bosch,* 584 F.2d 1113, 1121 (1st Cir.1978)); *see generally Bustamante v. Wall,* 866 A.2d 516, 523 (R.I.2005). Additionally, it is our opinion that Mr. Larngar has failed to meet his burden of demonstrating a reasonable probability that the outcome of his trial would have been different had his trial counsel requested a continuance so that she could view the evidence.

■ Mr. Larngar also faults his trial counsel for what he characterizes as her failure "to properly meet with and prepare [him] for the trial." At the postconviction-relief hearing, Mr. Larngar's trial counsel could not recall the dates of her meetings with Mr. Larngar and his family or the precise number of times that she met with them prior to trial, but she testified that she did remember meeting with Mr. Larngar on several occasions before the trial started. Mr. Larngar has acknowledged in his brief to this Court that there was "uncontroverted evidence" that his trial counsel met with his family and him for brief periods of time on a few occasions, and in his testimony at the postconviction-relief hearing he recalled that he met with his trial counsel for between twenty and thirty minutes on two occasions prior to trial. Both Mr. Larngar and his trial counsel testified that they had discussions about the various plea offers from the state as well. Mr. Larngar's brother testified at the postconviction-relief hearing that, in addition to the meetings in her office, trial counsel met with Mr. Larngar and his family in the courtroom four or five times during the course of the trial. The hearing justice concluded that Mr. Larngar's trial counsel "met with the family appropriately before the trial and discussed [the trial] with them * * *." Mr. Larngar has not pointed this Court to any evidence that would cause us to rule that that factual finding was clearly erroneous.

## C

### Alleged Interference with Right to Testify

■ The next alleged error that Mr. Larngar attributes to his trial counsel concerns an *ex parte* chambers conference during which Mr. Larngar's counsel informed the trial justice that Mr. Larngar would commit perjury if he were to testify on his own behalf. Mr. Larngar contends that, by failing to inform him that the chambers conference had occurred, his counsel created an "inherent conflict of interest." Mr. Larngar argues that he was prejudiced by this conflict of interest and that, in his view, at the moment when the conflict of interest was created, his trial counsel no longer had his informed consent to represent him. Consequently, Mr. Larngar contends that his counsel's representation of him was invalid and ineffec-

---

18. *See Strickland,* 466 U.S. at 687, 104 S.Ct. 2052.

tive, "thereby violating the [client's] rights under the Sixth and Fourteenth Amendment[s] to the United States Constitution and [a]rticle [1,][s]ections 2 and 10 of the Constitution of the State of Rhode Island." Mr. Larngar also argues that his trial counsel impermissibly interfered with his right to testify by threatening to withdraw from the case if Mr. Larngar continued to insist upon testifying on his own behalf.

Mr. Larngar's trial counsel testified that she and Mr. Larngar discussed "at length" his account of the events on the night in question. She said that, at some point during the course of her representation of Mr. Larngar, he expressed a desire to testify at trial; at that juncture, he gave her what she characterized as "an entire[ly] different story" from the one he had previously told her. Because of that inconsistency, trial counsel believed that Mr. Larngar's proposed testimony would be perjurious, and she attempted to dissuade him from testifying. Mr. Larngar testified that, when he continued to express his desire to testify, his trial counsel told him that, if he insisted on testifying, she would file a motion to withdraw from the case.

It was trial counsel's recollection that, when Mr. Larngar insisted upon taking the stand and giving what she believed would be perjurious testimony, she became alarmed and went to speak with the trial justice *ex parte* in chambers. According to trial counsel, she explained her concerns to the trial justice in chambers and asked him whether she should withdraw from the case and move for a mistrial, and he responded by telling her to proceed with the case. Mr. Larngar's trial counsel testified at the postconviction-relief hearing that it was her belief that, if Mr. Larngar took the stand, he would be committing another felony and, as his lawyer, she would be supporting him in doing so. She further

testified that it was her understanding of the law that in those circumstances she had a duty to bring her ethical and legal concerns to the attention of the trial justice. Because she wanted to avoid the adverse consequences to her client that she believed could stem from raising her concerns about Mr. Larngar's testimony in front of the prosecutor, trial counsel thought it best to speak with the trial justice *ex parte* in chambers.

Mr. Larngar's trial counsel could not recall whether she discussed that chambers conference with Mr. Larngar either before or after it occurred. She testified, however, that it was her belief that, under the circumstances, the attorney-client privilege was not "in [e]ffect." She further testified that she did not recall making any threat to Mr. Larngar that she would withdraw from the case if he continued to insist on testifying.

In rendering his decision on Mr. Larngar's application for postconviction relief, the hearing justice recalled that the conversation between himself and Mr. Larngar's trial counsel in chambers lasted no more than two to three minutes and that it did not strike him as something that should have been brought to the attention of the state. The hearing justice further stated that "[a]t no time" did Mr. Larngar's trial counsel give him "any indication [as to] what the content or what any prospective testimony may be from Mr. Larngar." The hearing justice also noted that he had engaged in a lengthy colloquy with Mr. Larngar on the record in open court during which (1) the trial justice emphasized to Mr. Larngar that he had an absolute right to testify and (2) Mr. Larngar expressly stated that he had made the decision on his own not to testify.

An attorney's duty with respect to how he or she should proceed when faced with what the attorney believes to be the pros-

pect of perjury by a client is not entirely a matter of black letter law; this particular area in the field of professional ethics is notoriously difficult, and the pertinent standards are not as definitive as would be desirable. In his decision denying Mr. Larngar's application for postconviction relief, the hearing justice quite correctly stated that "debate still continues about an attorney's obligation when put in this very position." [19] Mr. Larngar contends that, pursuant to Article V, Rule 3.3 of the Supreme Court Rules of Professional Conduct, an attorney's duty as an officer of the court to disclose potential perjury is subordinate to a criminal defendant's constitutional rights. Mr. Larngar also argues that, by threatening to withdraw in the middle of trial, his trial counsel impermissibly interfered with his right to testify on his own behalf.

It is our opinion that, in light of the United States Supreme Court's decision in *Nix v. Whiteside*, 475 U.S. 157, 106 S.Ct. 988, 89 L.Ed.2d 123 (1986), Mr. Larngar's argument is unconvincing. In that case, after having been convicted of murder, the defendant petitioned for a writ of habeas corpus in federal court, arguing that his trial counsel, who had threatened to withdraw if the defendant insisted on giving what the trial counsel believed would be perjurious testimony, had thereby interfered with the defendant's right to present a defense and his right to effective assistance of counsel. *Id.* at 162–63, 106 S.Ct. 988. The Supreme Court ultimately held that the defendant's constitutional rights had not been violated by his trial counsel's actions. *Id.* at 171, 106 S.Ct. 988. In so holding, the Supreme Court reasoned that "[w]hatever the scope of a constitutional right to testify, it is elementary that such a right does not extend to testifying *falsely*." *Id.* at 173, 106 S.Ct. 988. The Court also stated that, when a defendant "proposes to resort to perjury or to produce false evidence, one consequence is the risk of withdrawal of counsel." *Id.* at 174, 106 S.Ct. 988. The Court held that trial counsel's admonitions to his client in *Nix* did not impermissibly interfere with the defendant's right to present a defense. *Id.* at 173, 106 S.Ct. 988.

The Supreme Court in *Nix* also cautioned that the *Strickland* standard should not be applied overbroadly, stating that, when determining whether an attorney's conduct amounted to ineffective assistance of counsel, "a court must be careful not to narrow the wide range of conduct acceptable * * * so restrictively as to constitutionalize particular standards of professional conduct * * *." *Nix*, 475 U.S. at 165, 106 S.Ct. 988. The Court held that "whether [or not] seen as a 'threat' to withdraw from representation and disclose the illegal scheme, [the attorney's conduct fell] well within accepted standards of professional conduct and the range of reasonable professional conduct acceptable under *Strickland*." *Id.* at 171, 106 S.Ct. 988.

In the instant case, Mr. Larngar's trial counsel first attempted to dissuade Mr. Larngar from taking the stand at trial and

19. The Commentary that accompanies Article V, Rule 3.3 of the Supreme Court Rules of Professional Conduct is consistent with the hearing justice's characterization of the state of the rule with respect to the procedure that an attorney should follow when faced with prospective perjury by a client. The sub-section of that Commentary, which is entitled "Perjury by a Criminal Defendant," reads in pertinent part as follows:

"Whether an advocate for a criminally accused has the same duty of disclosure [as the lawyer otherwise has with respect to disclosing false evidence to the tribunal] has been intensely debated. While it is agreed that the lawyer should seek to persuade the client to refrain from perjurious testimony, there has been dispute concerning the lawyer's duty when that persuasion fails."

giving what she believed would be perjurious testimony. When Mr. Larngar continued to insist on testifying, his trial counsel requested an *ex parte* conference with the trial justice—an action that she believed she was obliged as an officer of the court to take. The hearing justice noted that he did not consider the conversation with Mr. Larngar's trial counsel to be of any "great moment." After reviewing the record, it cannot be said that trial counsel's actions in this respect fell outside the range of reasonable professional conduct acceptable under *Strickland.*

## D

### Alleged Drug Use by Trial Counsel

Mr. Larngar's final contention on appeal is that the hearing justice erred in not allowing him to introduce evidence at the hearing on his application for postconviction relief relating to defense counsel's alleged use of drugs during the trial. Mr. Larngar argues that such evidence would have supported his claim of ineffective assistance of counsel.

Our review of the record of the postconviction-relief hearing has revealed that at no time did the hearing justice unequivocally preclude the introduction of such evidence. Rather, when Mr. Larngar's counsel initially indicated that a particular witness had information about the "social conduct" of Mr. Larngar's trial counsel, the hearing justice simply stated, "I'm not so sure we are going to get into that." In response to the prosecutor's objection on the grounds that the only conduct of Mr. Larngar's trial counsel which was relevant was that which occurred in the courtroom during the trial, the hearing justice disagreed; the hearing justice stated that trial counsel's conduct outside the courtroom was relevant insofar as it had an impact on her ability to represent Mr. Larngar.

The hearing justice did express some concern about whether the particular witness called by Mr. Larngar's counsel, one Albertus Bruce, was the appropriate vehicle through which to introduce evidence about what he euphemistically referred to as the "social conduct" of Mr. Larngar's trial counsel. Notwithstanding that concern, however, after cautioning Mr. Larngar's postconviction-relief counsel to tread very lightly when questioning the witness, the hearing justice did allow him to proceed. Mr. Larngar's counsel at the hearing agreed to tread lightly, but he then never posed any questions to the witness concerning alleged drug use on the part of Mr. Larngar's trial counsel.

Regardless of why Mr. Larngar's postconviction-relief counsel chose not to further explore the issue of the alleged drug use, the blunt fact is that it was he who opted to stay away from that issue; the record is clear that the hearing justice did not forbid him from pursuing that line of questioning.[20] Accordingly, it is our opinion that there is no merit in Mr. Larngar's contention that the justice who presided over the postconviction-relief hearing erroneously barred the introduction of evidence relative to the alleged drug use issue.

---

**20.** It is the obligation of an attorney who is litigating a case in court to press diligently in an effort to establish the evidentiary points that he or she believes should be established; there are times when the attorney must advocate with special vigor. Of course, the attorney may not flout a clear and unequivocal judicial ruling, but he or she should also not decline to start down a particular path simply because the judge has manifested some preliminary degree of concern or negativity as to how he or she might rule with respect to a particular issue in the actual context of questions being posed and objections being made during the course of witness testimony.

## Conclusion

We have very carefully scrutinized the conduct of Mr. Larngar's privately retained trial attorney before and during the trial in this case, and we have concluded that he was afforded effective assistance of counsel to a degree sufficient to satisfy the pertinent constitutional standards. The applicant for postconviction relief who alleges that his trial counsel's assistance was ineffective must bear a "heavy burden[.]" *Heath,* 747 A.2d at 479. After considering the entire record through the requisite prism, we cannot say that the representation of Mr. Larngar at trial was "so wanting in all respects as to amount to a complete absence of a defense." *Id.*

For the foregoing reasons, we affirm the denial of McCarthy Larngar's application for postconviction relief. The record may be remanded to the Superior Court.